JOHNSON, Chief Judge.
The State of Florida has appealed from an order of the Circuit Court of Leon County dismissing an indictment against the appellee herein, which indictment was for murder.
Two girls, Flora Kay Granger and Elizabeth Ann Wood, were found murdered and their bodies somewhat mutilated, in a wooded area in Leon County on October 17, 1967. Subsequent thereto and as a result of certain findings of fact by the Sheriff’s Office and Office of the State Attorney, the matter was presented to and a grand jury in said county, rendered two indictments for murder against the appellee herein, Robert Scott Sanders — one for the murder of Miss Granger and one for the murder of Miss Wood.
The court appointed counsel to represent the defendant. Motion for consolidation for trial was denied.
The case of Miss Granger, being case number 5371, was tried first. The plea of insanity was interposed by the defendant and the Court properly followed the statute in such cases provided, and the psychiatrists so appointed testified at the trial for the murder of Miss Granger. The jury found the defendant not guilty by reason of insanity.
The State then brought on for trial the defendant under the indictment for the murder of Miss Wood, and the defendant immediately filed a motion to dismiss the indictment based upon several grounds, inter alia, embracing the grounds for dismissal on the principles of res judicata and collateral estoppel. The Court apparently selected grounds numbered 1 and 4 upon which to premise his order of dismissal. These grounds are quoted in the order as follows:
“1. The Defendant has entered his plea of not guilty be reason of insanity to the charges contained in this indictment, and subsequent to the entry of said plea, the Defendant’s insanity at the time he is alleged to have committed the crime charged in this indictment has been adjudicated by a court of competent jurisdiction, to-wit: By a verdict of not guilty by reason of insanity returned by a jury to this court on February 10, 1968, in criminal case no. 5371.
******
“4. That the issue of the Defendant’s insanity at the time and place he is alleged in this indictment to have murdered Elizabeth Ann Wood is res judicata, and the State of Florida, by virtue of the operation of the rule of collateral estoppel, is precluded and estopped from seeking a different adjudication of the issue of Defendant’s insanity at that time and place.”
The trial court stated that there was no material conflict or dispute in the evidence with respect to the time, place and circumstances surrounding the homicides, and that the court was of the opinion that under the evidence in case 5371 the jury could not have reasonably rendered their verdict upon any other basis than a determination by them that the defendant was insane at the time and place, when and zvhere, both Miss Granger and Miss Wood were killed, and not at the time and place only when Miss *290 Granger was killed, and therefore that the jury is finding the defendant not guilty by reason of insanity in the other case (case 5371) necessarily found and concluded that the defendant was insane at the time of the homicide in the instant case, and thereupon granted the motion to dismiss based upon the two grounds of the motion quoted supra.
The trial court is recognized as one of the more able trial judges in Florida, and it is seldom that he loses sight of the real issue and the applicable law fitting the facts, but in this instance we feel that the trial court did err in dismissing the indictment for the reasons hereinafter appearing.
In order to properly outline our reasons for holding the trial court in error, inasmuch as he necessarily had to allude to the evidence in the former trial in case 5371, we too must go to the record in said case 5371, and analyze the testimony and evidence in order to show wherein we feel that the matter of the homicide of Miss Wood has not been litigated nor has the sanity or insanity of the defendant at the alleged time of the killing of Miss Wood been necessarily concluded and become res judicata.
We have before us, and properly so, the complete record in case 5371. We do not feel that the testimony of the psychiatrists need be analyzed for the purpose of this decision. We think an analysis of the testimony of the defendant and that of the physician performing the autopsy and the physical evidence will be sufficient to point out wherein there remains unadjudicated jury questions having a bearing upon the sanity of the defendant with particular reference to the time element.
The defendant testified in his own behalf in a rather clear, intelligent and lucid manner as to his trip from Madison, Florida with a friend; about leaving the friend at a bowling alley to be picked up later; about meeting the two girls, taking them in his car and riding around. He even tells of going into the Blue Sink area, where the bodies were later found. He told very clearly of riding into the area to observe parked couples. He tells of having his gun; of tussling with Miss Granger who was sitting in the middle of the front seat between him and Miss Wood, and about arguing over the gun and a scuffle over the same. He also tells of the gun being fired and Miss Wood screaming that she was shot. He says he is not sure just what Miss Wood said.
We think the exact testimony of the defendant in answer to questions by the State Attorney should be repeated here to point up the defendant’s sanity, as follows:
“Q. What do you recall after the shot went off?
“A. Ann Wood screamed something about being shot. She just screamed; it was incoherent.
“Q. She screamed after the gun went off?
“A. Yes sir.
“Q. So you knew that you had hit her with that weapon; that one of those bullets had hit her someplace, did you not?
“A. She did not seem to be hurt but she did say that she was shot.
“Q. She said she was shot at that point ?
“A. She just — it was a scream, kind of incoherent. I don’t know just exactly what she did say.”
Certainly it cannot be seriously contended that the defendant was insane at this point. His memory was very clear on the point of shooting Miss Wood. For the purpose of this decision, it is immaterial whether the shot was accidental or not. That raises another jury question.
The further testimony of the defendant, which we think very pertinent, particularly as to the time element of the defendant’s claimed temporary insanity, after question *291 ing about the shot that had been fired, is as follows:
“Q. You know, then, that you were shocked ?
“A. I was what I would call a state of more or less shocked, not knowing, more or less, what it was. I just didn’t know what to do. I was confused and scared.
“Q. You knew that?
“A. Yes sir, I was confused and scared and I didn’t know what to do.
“Q. All right, and you knew you were scared and you knew that you were confused ?
“A. Yes, sir.
“Q. I’m right about that?
“A. Yes, sir. I was scared and confused.”
Does an insane person remember whether he was scared or not?
The defendant testified that it was about 9:00 P.M. when he and the girls entered the Blue Sink area, and he called his friend at the bowling alley at 10:00 to see if he was ready to go home. The friend said it was 10:15 when he called. The defendant admits that after he left the bodies — he saw them laying near the car, but about 20 or 30 feet apart — he went to a garage with which he was familiar and tried to clean up some — wash off the blood. He also tried to get the blood off his car.
From this testimony it appears that a period of approximately one hour elapsed between the time Miss Wood was first shot and the defendant emerged on the bowling alley to pick up his friend and return home. All the acts of the defendant, as related by him, are clear from the time he “came to” standing in front of his car until arrested by the Sheriff. He even remembered enough of something bad having happened to cause him to fabricate a falsehood as to how he had received a blooded arm. These were matters brought out in the trial in the Granger case, true, but the significant points we make here which precludes the doctrine of res judicata or collateral estop-pel from applying are: 1. Did the shot which was fired first, as stated by the defendant, before he lost his sanity, result in the death of Miss Wood? If so, then even the defendant does not claim to be insane at that point. The evidence from the autopsy shows that only one gun shot wound appeared in the body of Miss Wood and that it ranged through her breast. The question was not asked nor was any statement made as to whether this shot was a lethal wound or not. This remains a jury question — before the alleged mental breakdown. 2. There is evidence of a criminal assault and evidence that the body of Miss Wood was stabbed many, many times, but again there was no evidence adduced in the trial of case 5371 as to whether the stab wounds were made after the death of Miss Wood or not. From the evidence it appears that Miss Wood could have been dead from the pistol shot for the better part of an hour before the stab wounds were inflicted. She could have been dead — assaulted—and stabbed before Miss Granger was killed. 3. It could have been the shock of seeing what he had done to Miss Wood that caused his mind to snap, if indeed it did, and the slaughter of Miss Granger then occurred. These are possibilities which give rise to jury questions as to point of time.
The trial court refers to the “same time and place,” but the evidence shows only approximations of time, with a leeway of approximately one hour. If the defendant admits that he was all right mentally at 9:00 P.M. and again at 10:00, then who is to say his insanity lasted one hour, 30 minutes or 10 minutes. We think these are matters which were not raised nor decided by the jury in the Granger homicide trial.
We must remember that under Florida law where more than one person is killed by the same party in a single or *292 common action, there is a separate crime or offense for each person.
In State v. Lowe, 130 So.2d 288, our Second District Court of Appeal said:
“ * * * This Court holds that where two or more persons are killed by a single criminal act, there are as many separate and distinct offenses as there are persons killed by the unlawful act.

In the case sub judice, we know from the physical evidence that the homicides were not the result of a single criminal act nor were they necessarily at the same time and place — only approximately.
The trial court cited as one of the controlling authorities for his decision Adams v. United States, 287 F.2d 701 (5th Cir.) wherein he quotes:
“The doctrine of res judicata does apply to prevent relitigation of an issue in a crimina! as well as a civil case. * * ”
We agree with the quoted provision, but we also find in this same cited case this further language of the Federal Court, as follows:
“ * * * In this situation the authorities dealing directly with perjury prosecutions clearly hold that when the fact is not necessarily determined in the former trial, the possibility that it may have been does not prevent re-examination of that issue.”
* * * * * *
“The jury below had before it fact questions which Appellants have not shown, as of course they could not, to have been necessarily determined by the jury in the prior prosecution. * * *
“Principles of res judicata and collateral estoppel respond to the demands of the effective administration of justice. They do not prevent prosecution for perjury in situations such as this.”
In Yawn v. United States, 244 F.2d 235, 237, cited by the trial court, we do not think applicable because in such case, the issue which had been litigated in the former case was necessarily a part of the second charge against the defendant, all arising out of possession of a moonshine still, violation of the liquor laws and conspiracy to violate the liquor laws. These charges contained elements of the various statutory violations of law on the same subject matter and were necessarily a part of the proof.
The question of time did not enter into said case.
In the case sub judice, we have two alleged homicides — occurring on the same date, but no one knows how closely together they occurred except the defendant. No element of the homicide of the Granger girl was necessary to a trial for the homicide of the Wood girl. All we know is that the Wood girl was the first one shot and the doctors’ testimony was that the bullet entered one side of her chest and came out the other. Was she killed instantly by this shot? Who knows? Was it afterwards, after the homicide of Miss Wood that the defendant lost his mind? Who knows? There are too many unanswered and frankly, unasked questions for the rule of res judicata, double jeopardy or estoppel to apply.
So we see that the mere possibility that a fact may have been determined in the former trial, does not prevent reexamination of that issue. In the case sub judice, with so many unanswered questions as to time of death and which died first and whether death preceded the stabbing and mutilation of the body, we do not feel that the issue has become res judicata, but remains an issue to be reexamined by the jury.
We recognize the difficulty in making clear-cut determinations in matters of collateral estoppel. We find a rather comprehensive annotation on the subject in 9 ALR 3d, page 225 as follows:
“ * * * The struggle [applying the principle of collateral estoppel] has re *293 volved around the application to particular fact situations. Even if the legal principles underlying the doctrine of collateral estoppel were unequivocal and absolutely clear, as they are not, great difficulty lies in applying these principles to particular fact situations * * * ”
(Emphasis supplied.)
Herein is one of the points wherein we feel the trial court misapplied the principle of res judicata and collateral estoppel as to the question of the sanity of the defendant having been determined as of the time of death of Miss Wood when there is undisputed sanity at the time of the firing of the first shot which hit Miss Wood, and a total lack of evidence on the part of either the State or the defendant, from the medical autopsy or otherwise, as to when death of Miss Wood occurred. Whether the stab wounds were made after death from the gun shot wound or just when?
The physical evidence established the fact that the two girls were not killed with a single blow or act. In fact, the jury could find from the physical evidence that the two girls were not killed at the same place —approximate time and approximate place is insufficient for proof necessary.
We have researched the case law and while we do not find any case on all fours factually with the case sub judice which supports the trial court’s order, we do have several cases almost on all fours with this case which hold contrary to the view of the trial court. One case held that where sanity was an issue in one murder case, it did not preclude a retrying of the issue in a second case arising out of the same altercation or closely related time.
In Buatte v. United States, 350 F.2d 389, the defendant had shot a girl and killed her in her father’s tent and at the same time shot her brother who was a witness to the shooting of his sister, but the second shot was not fatal.
The language employed in that case was that “at the same time” the defendant shot the brother. The defendant interposed insanity as an issue, which imposed upon the state the burden of proving the defendant’s sanity. The jury concluded the state had failed to meet this burden and acquitted the defendant. Then on his trial for assault with intent to murder the brother, the defendant raised the plea of res judicata and collateral estoppel. The court said in that case that collateral estoppel had no application under the circumstances of this case, pointing out that there being two offenses, the evidence in the second case could be much stronger than in the first, as to the sanity of the defendant and held the plea to be no good. This case was decided in 1965, 9th Circuit, United States Court of Appeal.
Again we find in People v. Cygan, 229 Mich. 172, 200 N.W. 967 this statement, with which we agree:
“That defendant had, on ground of temporary insanity, been acquitted of murder, does not estop state in prosecution for assault to kill another victim at same time and place from urging that he was not insane at time of assault, nor entitle him to acquittal on ground of insanity.”
The identical question was presented in Hotema v. United States, 186 U.S. 413, 22 S.Ct. 895, 46 L.Ed. 1225, where by special plea to the indictment the defendant averred that three indictments were filed against him at the same time charging him with the crime of murder of three different persons; that two of them were consolidated and tried together and resulted in a verdict of not guilty; that the only defense offered on such trial was a plea of insanity; he admitted the killing, but affirmed that at the time thereof “he was suffering from such a diseased condition of the brain as that he did not have the mental capacity to commit murder.” The only issue made in the first case was whether he was sane or insane, and he alleged that all three persons were killed the same day, and that “every circumstance connect *294 ed with the killing charged in the latter case was proved on the other trial.” The court held this plea to be “wholly without merit” and sustained a demurrer thereto, which was affirmed by the Supreme Court of Michigan.
We also find a parallel case in State v. Cannon, 185 La. 395, 169 So. 446 (La.1936) where we find this statement of the law:
“Where accused killed two persons in same continuous transaction and was charged with murder in two indictments, issue of accused’s sanity held not foreclosed by conviction of murder under one indictment, since killing of each victim was a separate homicide under statute, and the two crimes were distinct.”
The court there held that the jury in the first case having held the defendant to be sane, did not preclude him from interposing the same defense in the second trial. The facts, were very similar to our case, in that the defendant had killed two women at the same time and place, and counsel for the defense contended that if the defendant was insane when he killed one of the women, he was insane when he killed the other. But, the court held, the killing of each was a separate homicide, a separate crime.
It therefore appears to us that there is a serious question as to the time element as to when the defendant’s mind snapped —with reference to whether before or after the death of Miss Wood and the evidence in the trial of the homicide of Miss Granger leaves so much time gap that we do not feel that the issue is res judicata and that collateral estoppel is not applicable to the particular facts of this case and the trial court was in error in dismissing the indictment, and the said order is hereby reversed and the indictment reinstated and said cause remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
SPECTOR, J., concurs.
RAWLS, J., dissents.