535 P.2d 641

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Raymond NAGEL, a/k/a Raymond Nagle, Defendant-Appellant.**

**No. 1538.**

Court of Appeals of New Mexico.
March 5, 1975.

Certiorari Denied April 3, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, App. Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Prentis Reid Griffith, Sp. Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

Defendant was convicted and sentenced on two counts of false imprisonment [§ 40A–4–3, N.M.S.A.1953 (2d Repl.Vol. 6)] and one count of aggravated assault [§ 40A–3–2]. We reverse.

A. *The doctrine of collateral estoppel entitles defendant to a directed verdict.*

The facts of this case are uncontroverted. In the early afternoon of August 26, 1973, the defendant, upset by the infidelity of his wife, Sarah, purchased a .38 revolver and went looking for his wife and her

paramour, an associate professor of psychology at the University of New Mexico, hereinafter called "professor". First, he went to the professor's house in Albuquerque and entered, but found no one at home. While he was in the house, two women, who were housesitting during the professor's absence, returned to the house for lunch. They were the prosecutrixes. Shortly after entering the house, they discovered defendant in the professor's study. During the course of the next twelve hours, defendant bound the women's hands and feet, pulled their pants to their ankles so they could not run, placed gags in their mouths, blindfolds over their eyes, and cotton in their ears, and tied them to a pillow. At approximately 2:30 a. m. on August 27, realizing that the professor and Sarah would not return, and having found a map with directions to the professor's cabin near Edgewood, New Mexico, defendant left the women tied to a pillow and drove to the professor's cabin which was located in Torrance County. After some initial difficulty, defendant located the cabin, found the professor and Sarah inside, and shot the professor four times, wounding him.

Upon his arrest, defendant gave a detailed statement of the events leading up to and including the acts recited above.

Defendant was charged in Torrance County with aggravated battery contrary to § 40A–3–5, N.M.S.A.1953 (2d Repl.Vol. 6) in Cause No. 1729. We take judicial notice of the record in that case. Upon examination, it appears that defendant pled ". . . not guilty by the reason of temporary insanity . . . ." However, the instructions given to the jury show (1) that the defendant "pleaded not guilty by reason of insanity"; (2) that "it must be a disease of the mind resulting in insanity of such a nature and degree that the accused was unable to control his actions or to prevent himself from doing the act"; (3) that if the defendant "knew the nature and quality of [the act], and that he knew it was wrong, if you find that by reason of

disease of the mind the defendant has been deprived of or lost the power of his will which would enable him to prevent himself from doing the crime charged, then you cannot find the defendant guilty of a crime"; (4) that ". . . it is your duty to determine from all the evidence bearing on the question whether the defendant was sane or insane at the time the alleged criminal act was committed."

In effect, these instructions followed the definition of insanity in State v. White, 58 N.M. 324, 270 P.2d 727 (1954).

The jury found the defendant "Not Guilty by reason of insanity." No appeal was prosecuted by the state. The verdict was final.

Defendant was also indicted in Bernalillo County. He was convicted of two offenses, supra, different from the offense for which he was tried in Torrance County. His sole defense at this second trial was insanity.

At the close of the state's case and at the close of defendant's case, defendant moved for a directed verdict of acquittal based on *res judicata*. Res judicata, strictly speaking, was not involved. Article II, Section 15, New Mexico Constitution provides in part:

> No person shall be compelled to testify against himself in a criminal proceeding, nor shall any person be twice put in jeopardy *for the same offense*; [Emphasis added]

State v. Maestas, 87 N.M. 6, 528 P.2d 650 (Ct.App.1974).

Nevertheless, in State ex rel. Sofeico v. Heffernan, 41 N.M. 219, 234, 67 P.2d 240 (1937) the Supreme Court said:

> Under this rule [res judicata] any right, fact, or matter in issue, and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether

the claim or demand, purpose, or subject matter of the two suits is the same or not.

We now call this rule "collateral estoppel".

■ The principle of collateral estoppel is embodied in the Fifth Amendment to the Constitution of the United States guaranty against double jeopardy and is fully applicable to states by force of the Fourteenth Amendment. Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971); Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). We followed Ashe v. Swenson in State v. Tijerina, 86 N.M. 31, 519 P.2d 127 (1973).

In *Tijerina,* the Court said:

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, *that issue cannot again be litigated between the same parties in any future lawsuit.*" [Emphasis added]

■ Defendant's motion for a directed verdict covered the principle of collateral estoppel; that is: (1) he was legally insane at the time of shooting the professor; (2) that there was close proximity, 16 hours, between the prior offenses for which defendant was convicted and the shooting of the professor for which he was acquitted; and (3) insanity related back to the offenses committed in the professor's house. The trial court denied the motion and held that the period for which insanity exists was within the province of the jury to determine. That is, it was up to the jury to determine if and when defendant became insane for purposes of the prior offenses.

In the Torrance County trial, the defense of insanity was an affirmative defense. Section 41–23–35(a), N.M.S.A.1953 (2d Repl.Vol. 6, 1973 Supp.). "Insanity is a question of fact to be decided by the trier of the facts." State v. Botello, 80 N.

M. 482, 483, 457 P.2d 1001, 1002 (Ct.App. 1969).

The issue of defendant's sanity was an issue of fact in the first trial. It was actually litigated. It was absolutely necessary to a decision in that trial.

The identical issue of fact, the sanity of the defendant, was raised in the second trial between the same parties from which this appeal was taken.

The pivotal question in this appeal is: Was the issue of "insanity" which was decided in defendant's favor at the first trial *the same issue of fact* as the issue of "insanity" that was decided against him at the second trial (alleged insanity 16 hours prior to the incident for which defendant was tried and acquitted)?

There are conflicting authorities on this question. In State v. Sanders, 229 So.2d 288 (Fla.App.1969), the court, one judge dissenting, recognized the difficulty, as we do, in making clear-cut determinations in matters of collateral estoppel. It reversed the trial court and held under the particular facts of that case that where the jury found defendant not guilty by reason of insanity in one murder case, collateral estoppel was not applicable on the issue of insanity on the second charge for murder which event occurred at a closely related period of time.

In Munn v. Pate, 489 P.2d 534 (Okl.Cr. 1971), a double murder occurred. In the first trial, the jury found defendant "not guilty by reason of insanity". Defendant was then held on a charge for murder in the second case and moved to dismiss the charge, claiming that the verdict in the first case was a bar under the collateral estoppel doctrine of the Fifth Amendment announced in Ashe v. Swenson, supra. The district court denied the motion. Defendant sought a writ of prohibition in the Court of Criminal Appeals and the writ was sustained. Relying on Ashe v. Swenson, supra, the Court said:

Accordingly, we hold that the jury's verdict in LeFlore County Case . . . finding petitioner not guilty by reason of

insanity, is a collateral estoppel bar under the Fifth Amendment, to his trial [in the present case] on the question of guilt.

We have reviewed the citations in *Sanders.* We are not impressed with the authorities cited and we find no compelling reason to distinguish or explain them. They all preceded Ashe v. Swenson, supra.

Does insanity revert back for the period of 16 hours prior to the incident for which defendant was tried and acquitted? We say "yes".

In State v. White, supra [58 N.M. 330, 270 P.2d 730] the court said:

.   .   . [T]he insanity of which we speak does not comprehend an insanity which occurs at a crisis and dissipates thereafter. The insanity of which we speak is *a true disease of the mind,* normally extending *over a considerable period of time,* as distinguished from a sort of momentary insanity arising from the pressure of circumstances. [Emphasis added]

What is meant by "a true disease of the mind" and "a considerable period of time"? See § 34–2–1(A) and § 34–2–5(G), N.M.S.A.1953 (Vol. 5, 1973 Supp.) of the Hospitalization of Mentally Ill Act.

".   .   . [A] mental disease or defect includes any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls." McDonald v. United States, 114 U.S.App.D.C. 120, 312 F.2d 847, 851 (1962).

A "considerable period of time" means a period of time defined as "rather large in extent or degree". Webster's Third New International Dictionary (1966) at 483.

Following the definition of "insanity" in State v. White, supra, we hold that the issue of defendant's insanity which was decided in his favor at his first trial was the same issue of fact decided against him at the second trial. Therefore, collateral estoppel attaches to the issue raised at the

second trial; and the judgment against defendant must be reversed.

Judgment is reversed and defendant is discharged.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.