634 P.2d 1298

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Armando Calderon MARQUEZ, Defendant-Appellant.**

**No. 5054.**

Court of Appeals of New Mexico.

Sept. 29, 1981.

747

John B. Bigelow, Chief Public Defender, Martha A. Daly, App. Defender, Santa Fe, Charles Driscoll, Trial Counsel, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

WOOD, Judge.

█ After breaking into the residence, defendant armed himself with a knife and then killed Jeanette King. Defendant appeals his convictions of aggravated burglary and second degree murder. See § 30–16–4(B), N.M.S.A.1978 and § 30–2–1, N.M.S.A. 1978 (Cum.Supp.1981). Issues listed in the docketing statement, but not briefed, were abandoned. *State v. Gallegos,* 92 N.M. 336, 587 P.2d 1347 (Ct.App.1978). We discuss the three issues that were briefed: (1) the trial court's refusal to instruct on voluntary manslaughter; (2) the trial court's refusal of defendant's requested instruction defining mental disease; and (3) the trial court's denial of a mistrial when a prosecution witness referred to defendant's prior indictment for rape.

*Refusal to Instruct on Voluntary Manslaughter*

██ Defendant was entitled to an instruction on voluntary manslaughter only if there was evidence to support this crime. *State v. Manus,* 93 N.M. 95, 597 P.2d 280

(1979). In this case, the question is whether there was evidence of adequate provocation. *State v. Robinson*, 94 N.M. 693, 616 P.2d 406 (1980); see *State v. Garcia*, 95 N.M. 260, 620 P.2d 1285 (1980).

There were two eyewitnesses to the killing—defendant and Margaret King, the mother of Jeanette. The claim of adequate provocation involves a vase that Jeanette threw at defendant.

Defendant's relationship with Jeanette had been turbulent for some time preceding the killing. On the day of the killing, defendant had attempted to contact Jeanette at her place of employment by subterfuge and had threatened Chadwick, who had dated Jeanette. Defendant believed Jeanette would press charges against him for violating an order which prohibited defendant from having contact with Jeanette.

In the evening, defendant went to Jeanette's home; no one was there. After waiting about fifteen minutes, defendant broke a window, unlocked the window and entered the house. Wandering from room to room, defendant picked up a knife from the kitchen and stuck it in his belt, then went upstairs.

Margaret returned to the house; so did Jeanette a short time later. The two were sitting in the den talking. As the two were discussing defendant, Margaret looked up and saw defendant standing in the doorway of the den. According to defendant, he decided to go downstairs and confront the two women. According to defendant, when Jeanette, who was sitting with her back to the doorway, saw the defendant she jumped up and screamed.

Defendant testified that he directed Jeanette to sit down; Jeanette responded by asking defendant if he knew it was illegal to break into a house. After further argument about Chadwick, defendant ordered Jeanette to come sit by him; she did not comply. Defendant then ordered Jeanette and Margaret to come over to him; they did not comply.

Defendant pulled out the knife and, exploding in anger, started stabbing at the wooden part of the chair. Jeanette screamed, ran to the middle of the room and continued screaming. Defendant ran to Jeanette, pushing Margaret out of the way to get to Jeanette. Defendant started stabbing Jeanette, who knocked the knife from defendant's hand and ran out of the room. Defendant retrieved the knife and caught up with Jeanette in the kitchen. According to defendant, it was at this point Jeanette threw the vase.

Defendant's testimony did not raise an issue as to adequate provocation.

Margaret testified that when Jeanette saw defendant in the doorway of the den Jeanette became very angry and accused defendant of committing "another offense" by breaking into the house. As defendant walked into the room, Jeanette threw a vase which hit defendant on the shoulder. Defendant continued into the room and sat down. Defendant then ordered Jeanette to come over to him. She did not go. Defendant then ordered Jeanette and Margaret to lie down in front of him. They did not comply. Jeanette ran behind Margaret. Defendant brought out the knife and the stabbing began. After killing Jeanette, defendant told Margaret that he had to kill her also; Margaret escaped.

Nothing in Margaret's testimony suggests, or permits an inference, that defendant reacted in any manner to the vase incident to which Margaret testified. Compare *State v. Najar*, 94 N.M. 193, 608 P.2d 169 (Ct.App.1980). Margaret's testimony is that defendant reacted when the women refused to comply with his orders. Compare *State v. Garcia*, supra, and *State v. Robinson*, supra. Margaret's testimony did not raise an issue as to adequate provocation.

In contending there was adequate provocation, defendant combines some of defendant's testimony with some of Margaret's testimony, with the result that the testimony relied on has been distorted. For example, in relying, in the appeal, on Margaret's version of the vase incident, defendant omits all reference to the orders he gave to the women and, in relying on defendant's version, defendant fails to mention that he testified that he did not know whether

Jeanette threw a vase at him while in the den. *State v. Manus*, supra, points out such distortions are improper.

Even if there were evidence that defendant reacted, and thus was provoked by the vase incident to which Margaret testified, the vase incident would not be adequate provocation in this case. *State v. Manus*, supra, points out that the exercise of a legal right, no matter how offensive, is not provocation adequate to reduce homicide from murder to manslaughter. Jeanette threw the vase at defendant, a burglar. Whether Jeanette threw the vase to protect herself or her home, she had a right to do so. *State v. Pollard*, 139 Mo. 220, 40 S.W. 949 (1897). See *State v. Couch*, 52 N.M. 127, 193 P.2d 405 (1946); U.J.I.Crim. 41.50 and 41.51. If there was any provocation, it was not brought about by Jeanette throwing a vase, but by defendant's illegal entry into Jeanette's home. Thus, if defendant had any provocation, that provocation would not reduce the homicide from murder to manslaughter. *State v. Martin*, 336 S.W.2d 394 (Mo.1960).

*Refused Instruction Defining Mental Disease*

The approved instruction on insanity, U.J.I. Crim. 41.00, was given. A part of the instruction given states: "A person is insane if, as a result of a mental disease, he could not prevent himself from committing the act."

■ Defendant requested an instruction defining mental disease. It read: "The mental disease comprehended by the insanity defense is any abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls."

The defense theory was that defendant was insane at the time of the killing. No claim is made that the approved instruction on insanity was improperly given. Defendant contends that the instruction given was incomplete because mental disease is not defined. He claims the refusal of his requested instruction was error because the definition of mental disease was necessary to aid the jury in deciding the insanity issue.

■ There being no definition of mental disease in the approved instructions, an instruction defining that term would not have been error because the meaning of mental disease is not adequately covered in U.J.I. Crim. 41.00. *State v. Ruiz*, 94 N.M. 771, 617 P.2d 160 (Ct.App.1980); *State v. Griego*, 90 N.M. 463, 564 P.2d 1345 (Ct.App.1977). Because the meaning of mental disease is not adequately covered, it would have been error to refuse a requested instruction which correctly defined the term. *State v. Ruiz*, supra.

The refused instruction was taken from *State v. Nagel*, 87 N.M. 434, 535 P.2d 641 (Ct.App.1975). See also *State v. Gutierrez*, 88 N.M. 448, 541 P.2d 628 (Ct.App.1975). However, defendant is incorrect in asserting that the refused instruction was a correct definition.

■ For there to be mental disease there must be a true disease of the mind "normally extending over a considerable period of time, as distinguished from a sort of momentary insanity arising from the pressure of circumstances." *State v. White*, 58 N.M. 324, 270 P.2d 727 (1954). Mental disease "does not comprehend an insanity which occurs at a crisis and dissipates thereafter." *State v. White*, id. This time factor was discussed in *State v. Valenzuela*, 90 N.M. 25, 559 P.2d 402 (1976), in terms of a fixed mental disease as opposed to momentary insanity. See also *State v. Hartley*, 90 N.M. 488, 565 P.2d 658 (1977).

*State v. Nagel*, supra, on which defendant relies, discusses the time period; the required instruction does not. Because of the failure to include the requisite time period within the definition of mental disease, the requested instruction was not a correct definition of mental disease.

No instruction defined mental disease. There being a failure to instruct, defendant was required to tender a correct instruction. The instruction requested not being correct, the trial court did not err in refusing it. Rule of Crim.Proc. 41(e); *State v. Romero*, 86 N.M. 99, 519 P.2d 1180 (Ct.App.1974).

*Reference to a Prior Indictment for Rape*

■ In presenting defendant's psychiatric history, defense witnesses testified, on

direct examination, of instances of defendant's violence against women. One of the instances was that defendant had been arrested for a rape in 1973.

A prosecution witness, testifying on direct examination on rebuttal, was asked about the alleged rape in 1973. The answer: "What I know about that is that, uh, he was indicted by a grand jury . . . ."

Defendant moved for a mistrial arguing it was prejudicial evidence of a prior crime without proof of conviction. The trial court denied the motion for a mistrial, but instructed the jury to disregard the witness's non-responsive answer. Outside the presence of the jury, the trial court instructed the witness to stay away from legal matters and, in effect, to pay attention and give responsive answers to the questions asked.

To the extent defendant is arguing, on appeal, his trial court claim that prosecutor misconduct was involved, the answer is that the trial court considered the reference to an indictment as non-responsive to the question asked. See *State v. Baca*, 89 N.M. 204, 549 P.2d 282 (1976).

The claim that the trial court erred in denying a mistrial is without merit. Previous testimony had brought out the 1973 arrest, and that defendant had been referred to a sex offenders program. In light of this testimony, the trial court's instruction to the jury, to disregard the reference to an indictment, was sufficient to cure any prejudice. The appellate issue is whether the trial court abused its discretion in denying a mistrial. *State v. Perez*, 95 N.M. 262, 620 P.2d 1287 (1980). There was no abuse of discretion. *State v. Vialpando*, 93 N.M. 289, 599 P.2d 1086 (Ct.App.1979); *State v. McFerran*, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969).

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HENDLEY and WALTERS, JJ., concur.