725 P.2d 839

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Kenneth DURANTE, Defendant-Appellant.**

**No. 8765.**

Court of Appeals of New Mexico.

March 4, 1986.

Certiorari Denied March 26, 1986.

Jacquelyn Robins, Chief Public Defender, David Stafford, Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Charles W. Rennick, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of attempted second degree murder, contrary to NMSA 1978, Sections 30–2–1(B) and 30–28–1(B) (Repl.Pamp. 1984); aggravated burglary, contrary to

NMSA 1978, Section 30–16–4 (Repl.Pamp. 1984); and aggravated assault, contrary to NMSA 1978, Section 30–3–2 (Repl.Pamp. 1984), defendant appeals. The issues raised concern admission of evidence, violation of discovery rules, denial of requested instructions, and double jeopardy. Other issues listed in the docketing statement, but not briefed, are abandoned. *State v. Fish,* 102 N.M. 775, 701 P.2d 374 (Ct.App. 1985).

At about 5:00 a.m., an intruder broke into the home of the victims. The victims were asleep. The female victim was awakened by a hand being placed over her mouth. She was told that she would be killed if she screamed. Shortly thereafter, the male victim woke up, attacked, and struggled with the intruder. The intruder had a knife and the male victim was stabbed several times. The intruder wore a garment like a ski mask over glasses and wore gloves. He was described as about 5 feet, 9 inches tall, and was thin.

A trail of blood led from the victims' house to an alley where a pair of gloves were found. The gloves bore blood stains matching the type of blood of both the defendant and the male victim. The gloves also contained hair similar to that of the male victim. More significantly, the left glove had a cut in the middle finger. Shortly after the male victim arrived at the hospital, defendant arrived for treatment of a deep knife wound to his left middle finger. Following a search of defendant's home, items were seized. The items included a shirt which was missing a button, butterscotch candies, and a set of knives. A button matching those on the shirt and butterscotch candies were found in the victims' house. The broken tip of a knife found in one of the victim's wounds was consistent with the knives found at defendant's house. Blood of defendant's type was also found in the victims' house.

Defendant presented an alibi defense. He also explained that he received the knife wound while he was sharpening a knife at home.

**I**

Defendant sought to present certain evidence which he claims would have cast doubt on the matter of his identity as the intruder. Approximately a week before the incident forming the basis of these charges, there was a burglary and rape three and one-half blocks away. These crimes also occurred in the early morning and the perpetrator was dressed similarly to the perpetrator of the crimes in this case, including wearing a mask over glasses. The perpetrator was also described as being around 5 feet, 9 inches tall, with a slim build. Noting the similarities, Officer Ross acquired a search warrant for obtaining samples of defendant's hair and blood. However, none of the hair found at the scene of the earlier crimes matched defendant's samples.

Relying on an oral agreement to appear, defense counsel did not subpoena Officer Ross to defendant's trial. During his trial, defendant found that Officer Ross had "gone fishing" and he moved for a continuance. It was denied. Defendant then sought to introduce the affidavit for search warrant, detailing the similarities in the crimes, and the lab report, showing that the evidence did not match defendant's samples. The trial court refused admission of this evidence. Following the close of the evidence, but before the jury was instructed, Officer Ross was present and defendant offered his testimony. The trial court refused the offer because it had found that the tendered evidence was not relevant.

On appeal, defendant contends that the trial court abused its discretion in denying the continuance. Alternatively, defendant contends that his counsel provided ineffective assistance in not subpoenaing Officer Ross. As a last alternative, defendant contends that the trial court erred in refusing admission of his documentary evidence. The state controverts all of these assertions and, additionally, contends that the trial court did not abuse its discretion in denying admission to the proferred evidence in any event. We agree with the latter contention and, because the trial

court's final ruling made defendant's other contentions moot, we need not reach defendant's issues regarding the continuance, the ineffective assistance of counsel, or the hearsay.

"Other crimes" evidence is admissible to show that defendant was or was not the perpetrator of a particular crime. *See State v. Saavedra*, 103 N.M. 282, 705 P.2d 1133 (1985); *State v. Burdex*, 100 N.M. 197, 668 P.2d 313 (Ct.App.1983). The admission of evidence under NMSA 1978, Evid.Rule 404(b) (Repl.Pamp.1983) is discretionary with the trial court. *Saavedra; State v. Allen*, 91 N.M. 759, 581 P.2d 22 (Ct.App.1978). In *Saavedra*, our Supreme Court held that the trial court had abused its discretion in not allowing Saavedra to introduce evidence that Burdex had committed and been convicted of eight similar robberies.

We believe that the facts are sufficiently different in our case to warrant a different result. In *Saavedra*, Burdex had already been convicted of the other robberies. Thus, the identity of the robber was known and the robber was not the defendant. In this case, it is unknown who committed the other crimes. Although the hairs found at the scene of the other crimes were dissimilar to those of defendant, that fact does not rule defendant out as the perpetrator of the other crimes. The sister of one of the victims was present at the scene of the other crimes. The lab report did not determine whether the hairs belonged to her.

In this case, defendant claims that the excluded evidence was critical to his defense. However, as will be seen, the probative value of the evidence was so weak that we do not believe the excluded evidence can possibly be characterized as critical. In New Mexico, the admission or exclusion of evidence is discretionary with the trial court and such discretion is applicable to "other crimes" evidence. *Saavedra; Allen.*

■ We cannot say the trial court abused its discretion in excluding the proferred evidence. The trial court commented that the evidence had little probative value.

This was undoubtedly true inasmuch as the only evidence tested in the case of the other crimes were hairs, and all the testing showed was that the hairs found were neither the defendant's nor the victim's. However, other factors were present: there was a third person at the scene of the other crimes and her hairs were not tested; the perpetrator of the other crimes was wearing a ski mask, making it unlikely that hairs would be left at the scene; and no hairs were found at the scene of this crime. Thus, the evidence that defendant did not commit the other crimes was weak. *See Holt v. United States*, 342 F.2d 163 (5th Cir.1965); *Commonwealth v. Murphy*, 282 Mass. 593, 185 N.E. 486 (1933). The trial court also commented that the introduction of the "other crimes" evidence would make the state want to prove that defendant did commit the other crimes, thus raising the specters of confusion and waste of time in trying collateral issues. *See* NMSA 1978, Evid.R. 403 (Repl.Pamp.1983). Under these circumstances, the trial court's decision to disallow this evidence cannot be said to be contrary to the logic and effect of the circumstances before it. *See State v. Hargrove*, 81 N.M. 145, 464 P.2d 564 (Ct.App.1970). Accordingly, the trial court did not abuse its discretion in excluding the evidence.

## II

■ In our recitation of the facts, we noted that blood found at the victims' house matched defendant's blood type. It was type "O." The state made its initial discovery to defendant in this case in August 1984. No test results were included. The results of the blood tests were not sent from the state laboratory to the local police department until October 1984. Six months later, in April 1985, the prosecution disclosed the test results to defendant. Defendant contends that, because of the delay in receiving the test results, he was prevented from doing enzyme analysis of the blood. Therefore, he argued that the charges should have been dismissed. *See State v. Lovato*, 94 N.M. 780, 617 P.2d 169

(Ct.App.1980). On appeal, he simply argues for a reversal.

Defense counsel argues that 45% of the population has type "O" blood, that enzyme analysis could narrow the percentage of the population down to 5%, that enzyme analysis could have been done in October, and that April was too late to do enzyme analysis. However, no evidence supporting these arguments was presented to the trial court at the hearing on defendant's motion to dismiss the charges. Defendant did not demonstrate the requisite degree of prejudice. *See State v. Chouinard,* 96 N.M. 658, 634 P.2d 680 (1981). The arguments of counsel are not evidence such as would afford defendant relief. *See State v. Gilbert,* 100 N.M. 392, 671 P.2d 640 (1983); *State v. Jacobs,* 102 N.M. 801, 701 P.2d 400 (Ct.App.1985); *State v. Gammill,* 102 N.M. 652, 699 P.2d 125 (Ct.App.1985). No prejudice having been shown, the issue is without merit.

**III**

Defendant contends that the trial court erred in refusing his requested instructions on breaking and entering, attempted voluntary manslaughter, and self-defense. We do not consider the self-defense claim because it was not included as an issue in defendant's docketing statement, nor did defendant move to amend the docketing statement to add this issue. *State v. Vogenthaler,* 89 N.M. 150, 548 P.2d 112 (Ct.App.1976). *See State v. Rael,* 100 N.M. 193, 668 P.2d 309 (Ct.App.1983). The attempted voluntary manslaughter claim is answered by *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979), and *State v. Marquez,* 96 N.M. 746, 634 P.2d 1298 (Ct.App.1981). Defendant cannot create the provocation which would reduce murder to manslaughter.

With respect to the breaking and entering claim, there must be evidence to establish that the lesser offense was the highest degree of crime committed. *State v. Southerland,* 100 N.M. 591, 673 P.2d 1324 (Ct.App.1983). In this case, the jury was instructed that the specific intent necessary for the aggravated burglary included the intent to commit an aggravated assault, or a theft, or an aggravated battery, or a homicide once defendant got inside. Defendant argues that the evidence is susceptible of inferences that he did not have the requisite intent to commit any batteries or homicides until he got inside. We agree. He also argues that, because nothing was missing, the jury could have found he did not intend to commit a theft. Again, we agree. However, an aggravated assault includes threatening or menacing another while wearing a mask upon the face. § 30-3-2. There was no evidence other than defendant had the intent, when he entered the house, to threaten someone while masked. There was simply no other explanation for possessing a ski mask and gloves in July when this incident occurred. Defendant's reliance on the testimony of a psychologist he presented at trial does not aid him in this issue. The psychologist testified that defendant's mental illness would not prevent him from forming specific intent and that all defendant's actions were deliberate. Accordingly, under *Southerland,* the requested instruction on breaking and entering was properly refused.

**IV**

Defendant contends that his due process and double jeopardy rights were violated because the trial court submitted the charged crimes of aggravated battery and attempted second degree murder to the jury. When the jury found defendant guilty of both crimes, the trial court merged the two findings of guilt into one conviction for attempted second degree murder and sentenced defendant only for that crime.

This issue is frivolous. Defendant relies on *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). However, *Ball* involved two convictions and only one sentence. We distinguished *Ball* in *State v. Srader,* 103 N.M. 205, 704 P.2d 459 (Ct.App.1985). Defendant does not mention *Srader.* This case, having only

one conviction, does not violate the rules set forth in *Ball* or *Srader*. *See State v. Gallegos,* 92 N.M. 370, 588 P.2d 1045 (Ct. App.1978).

Defendant also contends that instructions on both aggravated battery and attempted second degree murder confused the jury and increased in the jurors' minds the severity of the alleged behavior. No authority is cited for this proposition. We will not review this issue. *In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984).

Affirmed.

IT IS SO ORDERED.

BIVINS and ALARID, JJ., concur.