[No. 3509. Oct. 8, 1930.]

STATE v. ARAGON.

[292 Pac. 225.]

Keith W. Edwards, of Ft. Sumner, for appellant.

M. A. Otero, Jr., Atty. Gen., and E. C. Warfel, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

BICKLEY, C. J.

Appellant was convicted of murder in the second degree.

He complains that the court failed to submit the issue of voluntary drunkenness as a defense to murder in the second degree. That question was settled contrary to appellant's contention in State v. Cooley, 19 N. M. 91, 140 P. 1111, 52 L. R. A. (N. S.) 230. The only decisions we have found contra are in those jurisdictions where a specific intent to take life is required to constitute murder. See annotation, "Drunkenness as Affecting Existence of Elements Essential to Murder in Second Degree," 8 A. L. R. 1052. Such a specific intent is not an essential to a charge of murder under the common law or our statutes. See Territory v. Montoya, 17 N. M. 122, 125 P. 622.

Appellant also complains of the instruction given by the court treating of the effect of voluntary intoxication

as affecting existence of elements essential to murder in first degree, as being misleading and prejudicial because it concluded with the language:

"If the jury believe from the evidence and beyond a reasonable doubt that the Defendant Eloy Aragon killed the deceased, G. H. McLain, as charged in the indictment, and at the time of such killing the Defendant was under the influence of liquor voluntarily taken by him, then said intoxication so produced is, in law, no excuse for the act done by the Defendant, if it was done, unless they believe from the evidence such intoxication was such as did in fact deprive him at the time of the killing of the mental capacity to form a malicious, deliberate, and premeditated purpose to kill, in which event they may still find the Defendant guilty of murder in the second degree, under the instructions herein given."

Appellant argues that the instruction should have included at the end thereof, "or voluntary manslaughter under the instruction herein given." He argues that the effect of the omission of the words last quoted was to mislead the jury into believing that they could only consider whether the defendant was guilty of murder in the first or second degrees. We do not think so. Even if the instruction was faulty, the appellant was not injured thereby so far as the first degree charge is concerned, as he was convicted only of murder in the second degree. See State v. Brigance, 31 N. M. 436, 246 P. 897.

As the court's general charge embraced manslaughter, we do not think the jury could have been misled into thinking that the instruction complained of had the effect to eliminate manslaughter from the consideration of the jury.

Appellant complains of the refusal of the court to give a requested instruction to the effect that the jury should consider his alleged intoxication as a fact bearing upon heat of passion as essential to reduce the grade of homicide to involuntary manslaughter. We understand the argument to be that provoking facts and circumstances which might leave a sober man cool would engender "heat of passion" in an intoxicated person. That may be so, but, as drunkenness does not excuse homicide, so by the same token it may not be available as a factor contributing to heat of passion.

Appellant complains of the court's failure to instruct the jury as to the law of self-defense. In Terri-

tory v. Thomason, 4 N. M. (Gild.) 154, 13 P. 223, it was decided:

"In such case, where there is no evidence to show a killing in self-defense, it is not error in the trial court's refusing to instruct the jury as to the law of self-defense."

This is in accord with the general rule. See volume 10, Encyc, Pleading and Practice, p. 173.

The facts as shown by the record are substantially as follows: There was a dance on the night of the killing in the house of Demetio Meis in Yeso. The deceased lived in a house near the dance hall. At the time of the occurrence, the three small children of deceased were seriously ill. During the early part of the evening after the dance started, the appellant appeared in the dance hall in an intoxicated condition and by profane and indecent language disturbed the dancers, and he was put out. Later, he returned to the dance and again created a disturbance and broke up the dance, and he was again put out of the hall, and one Eduardo Gonzales, who was one of the musicians and an old friend and acquaintance of the appellant, went out and into the crowd around the appellant and suggested to them that some one keep appellant out of the house and the remainder go back and continue the dance, whereupon appellant in a braggadocio manner demanded to know who was going to keep him out, and at the same time cut Gonzales with a knife. Gonzales then struck at appellant and tried to get away, but, before he could escape, appellant had cut him several times. Gonzales then got away, and soon appellant found him and again approached, but Gonzales got hold of a piece of board and struck appellant on the head with it and knocked him down. About this time, appellant had come upon deceased's premises and within a short distance from the door of the house occupied by the deceased, G. H. McLain. He was cursing, swearing, and challenging to fight, and was tussling with those around him. This was greatly disturbing to the sick children, causing them to scream, and the deceased, McLain, stepped outside the door of his house and asked appellant to cease the disturbance and go away. Appellant not complying with the request, deceased approached him and repeated the request, whereupon appellant turned to deceased

and in a belligerent manner, said to him, "Damn you, Bill," and fatally stabbed him. Deceased then struck appellant with his hand, and they both fell to the ground. There is some controversy between counsel as to the sequence of the stabbing by appellant and the blow struck by deceased. From a reading of the record, it seems plain that deceased did not strike first. The most that may be claimed by appellant is that deceased "shoved" him. There is no substantial evidence warranting a belief by appellant that deceased entertained an apparent design to take his life or inflict some great bodily harm upon him. Appellant testified that he had no knowledge of anything that was happening from the time he left the dance hall until he found himself in jail the next morning, and that he had given his knife away about a month before the killing and did not have a knife at the time of the fight, and that he did not believe that he had stabbed deceased.

In State v. Parks, 25 N. M. 395, 183 P. 433, 434, we held:

"It is not sufficient to justify the taking of human life that a person has reason to apprehend death or great bodily harm to himself unless he killed his assailant. ·He must entertain such belief and must act upon it."

The evidence in no wise measures up to these requirements. The right of self-defense is not a speculative one, but a substantial one, when these requirements are fully met. The court would have committed error against the state had it charged upon the law of self-defense.

We find no error in the record, and the judgment is therefore affirmed, and it is so ordered.

WATSON, and SIMMS, JJ., concur.

PARKER and CATRON, JJ., did not participate.