34 P.(2d) 870

### STATE v. WRIGHT.

No. 3964.

Supreme Court of New Mexico.

July 10, 1934.

Askren & Watson, of Roswell, and Caswell S. Neal, of Carlsbad, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

ZINN, Justice.

Carl Wright was indicted for the murder of Andrew Jackson Foster in Eddy county, N. M. He went to trial and was convicted of voluntary manslaughter. On appeal the cause was reversed. See State v. Wright, 36 N. M. 74, 8 P.(2d) 433. On a retrial of the case he was again convicted of voluntary manslaughter, was sentenced, from which he prosecutes this appeal.

Three points are urged as error. The first and most important point presented is that there was no evidence to support a voluntary manslaughter verdict. Appellant points out that no evidence was introduced showing heat of passion on the part of appellant or of any sudden quarrel between Wright and Foster. The appellant's position is that the state made out a case of first degree murder because the state proved, as claimed by appellant, a calculated plan on the part of Wright to entice Foster to appellant's ranch for the purpose of assaulting Foster, and, having accomplished this, maliciously killed him. Appellant's position is that the state's case at all times tended to show murder, and his case tended to show self-defense.

■ This identical theory was urged upon this court in the case of State v. Kidd, 24 N. M. 572, 175 P. 772, 774. Speaking through Justice Parker, we there said: "All that is required (*to make of the killing manslaughter*) is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, and to exclude malice, and to render the defendant incapable of cool reflection." (Italics ours.)

The evidence discloses that Foster went to Wright's corral, and at the gate of the corral Wright accused Foster of having taken from his pasture some bulls belonging to Wright. Language was used which ordinarily incites a quarrel, and very often bloodshed, as in this case. Testimony of the appellant at the former trial was introduced. Appellant there testified that he said to the deceased, "Mr. Foster, I want to be a neighbor to you, get along with you, one thing, you got to bring those bulls home," and thereupon the deceased said, "God damn, I will kill you if

you accuse me of stealing those bulls." The deceased kept facing the appellant, who thereupon grabbed up a mountain willow stay, and hit him three times, fracturing his skull, from which Foster died.

We quote from the testimony of appellant at the former hearing:

"Q. How many times did you hit Foster? A. I don't remember but one. I didn't hit him but once.

"Q. Why did you hit him? A. He was trying to get that gun. *I was afraid of him.*

"Q. Why did you follow him into the second corral? A. Why he was trying to get that gun. I stepped up close to him.

"Q. Did you intend to kill him when you hit him? A. No, sir; I didn't want to kill him.

"Q. Did you intend to hit him? A. Yes, I intended to hit him. *I was afraid he would shoot me.*

"Q. Had you ever had any trouble with Mr. Foster? A. No, sir.

"Q. No time? A. No, sir."

During the present trial, the defendant, on cross-examination testified:

"Q. Just when did you pick up that stick? A. When he made for his gun, run his hand in there.

"Q. What did you think when he made for that gun? *Scare you? A. Well, I would think so. Wouldn't it you?*

"Q. *Did it scare you? A. Certainly.*

"Q. *You were frightened? A. Yes, sir.*

"Q. *Excited? A. I reckon I was."*

From the lips of the appellant come the words describing his terror. He was in such terror that he was incapable of cool reflection. Counsel for appellant urges upon us in oral argument that terror is not an element in manslaughter. We have held differently. State v. Kidd, supra. We are not persuaded to change this rule.

Clearly, the jury was justified on Wright's own admissions in believing that Wright killed Foster while under the influence of an uncontrollable fear of death or great bodily harm. Under the circumstances the act is not excused on the ground of self-defense, but on the contrary brought the homicide charged against the appellant within the degree of voluntary manslaughter. State v. Kidd, supra.

As to the second point urged upon us by appellant as error we find no merit. The appellant contends that the court erred when the jury was instructed, over objection, as to the law of voluntary manslaughter. Appellant again argues that there is no evidence to bring the case within the degree of voluntary manslaughter. What we said in deciding the first issue is here applicable without further comment.

The third and final point urged by appellant is that the state, as a part of its case in chief, offered, and the court admitted in evidence, over objection, the cross-examination of appellant at the former trial to be

read to the jury. Appellant contends that this testimony was offered under the guise of attempting to show a declaration against interest, when in truth and in fact it subjected the defendant to a double cross-examination by different counsel. The cross-examination at the former trial was conducted by L. O. Fullen, Esq., as special prosecutor, and at this trial by the district attorney.

To understand this point, it becomes necessary to show what transpired at the present trial relating to the error urged.

The state was limited in its prosecution to voluntary manslaughter, and, in order to establish a prima facie case, being unable to place the defendant on the stand, offered, and the court admitted in evidence, the testimony of the appellant at the former hearing wherein he related the incidents surrounding the homicide disclosing his own state of mind at the time indicative of fear and terror.

■ When the testimony was offered to be read to the jury, counsel for appellant objected to the introduction as being a portion of a statement with reference to the res gestæ unless everything said by him in that statement be placed before the jury. The state announced that the offer was made not as a part of the res gestæ, but as a declaration against interest, made by the appellant. There being no objection, the testimony of the appellant, apparently given in direct examination at the former trial, was introduced. As the state offered the cross-examination at the former trial relating to the same conversations and incidents, counsel for appellant

objected to the introduction of such cross-examination. Appellant did not point to any vice or prejudice in such offer. The objection was overruled. The objection now made by appellant was not made to the lower court, and for that reason cannot be considered here.

■ The evidence that was offered constituted a declaration against interest, and, whether in or out of court, is admissible in evidence. This the appellant admits in his brief. Appellant contends that the evidence is not against the interest of the appellant. Clearly it is against his interest, since it shows that the appellant killed the deceased and that he acted under the influence of terror.

The case of Flohr v. Territory, 14 Okl. 477, 78 P. 565, 572, which the appellant contends supports his theory, is not in point.

In that case a witness by the name of Hawkes was called by the prosecution. The witness was a stenographer, and had taken the testimony in the trial of which the defendants were witnesses. The witness Hawkes, when placed on the witness stand, testified to certain questions propounded to Flohr in the other trial and the answers given by him thereto. This testimony was offered for the purpose of impeachment, and upon cross-examination the witness was asked if he had his shorthand taken at the trial, and answered that he had. He was then asked to read from the notes the balance of the testimony given by Charles Flohr and Emma Flohr at that trial, other than already given. The question was objected to on the part of

the territory, and the objection was sustained. The court said: "This offer was too general. While it is the correct rule that, where a party has introduced part of a conversation or portions of a written statement, the adverse party is, on cross-examination, entitled to the whole of such conversation or statement relating to the subject-matter of the examination in chief, yet it must be offered in such manner that the court can determine its materiality and relevancy before it has gone to the jury. It does not necessarily follow that, because a portion of the questions and answers submitted to and given by a witness upon a former trial are admitted in evidence, the whole of his testimony given in the former cause becomes competent or material. And as this offer was of the entire testimony as shown in the stenographer's shorthand notes, we think there was no error in sustaining the objection to its introduction."

We do not quarrel with the quoted rule, but it is not applicable here. No attempt was made by appellant to introduce any of his former testimony which might explain away the element of voluntary manslaughter as spoken from his own lips, and, when testimony was read beyond this material point and proper objections were made, such objections were sustained.

Finding no error, the judgment of the district court should be affirmed, and it is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.