2006–NMSC–003

127 P.3d 537

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Tremaine JERNIGAN, Defendant–Petitioner.**

No. 28,525.

Supreme Court of New Mexico.

Dec. 16, 2005.

Rehearing Denied Jan. 20, 2006.

John Bigelow, Chief Public Defender, William A. O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Respondent.

Freedman Boyd Daniels Hollander & Goldberg P.A., Zachary A. Ives, Albuquerque, NM, Amicus Curiae, New Mexico Criminal Defense Lawyers Association.

## OPINION

CHÁVEZ, Justice.

{1} Defendant was convicted of second-degree murder for the killing of Jerome Scott, attempted second-degree murder for the shooting of Chris Washington, and tampering with evidence. For these convictions, Defendant was sentenced to twenty-eight years in prison. His basic sentence of nineteen years and six months was enhanced by six years and six months based on the trial court's finding of aggravating circumstances.[1] Defendant contends that his convictions for both second-degree murder and attempted second-degree murder should be reversed because the trial court erred in refusing to instruct the jury on defense of another. As an additional ground for reversing his convic-tion for attempted second-degree murder, Defendant contends the trial court erred in refusing to instruct the jury on attempted voluntary manslaughter. Finally, Defendant contends that it was unconstitutional for the trial judge to enhance his sentence by finding aggravating circumstances based on facts not found by the jury. The Court of Appeals affirmed Defendant's convictions and sentencing. We granted Defendant's Petition for Certiorari.

{2} We hold that the evidence presented did not support Defendant's theories of defense of another for the shooting of Washington or the killing of Scott. As a matter of first impression, we hold that under limited circumstances attempted voluntary manslaughter is a crime in New Mexico. Because Defendant presented evidence of sufficient provocation for the shooting of Washington, and the jury was instructed on attempted second-degree murder with lack of sufficient provocation as an element, the district court should have instructed the jury on attempted voluntary manslaughter. Having refused the tendered attempted voluntary manslaughter instruction, we reverse Defendant's conviction for attempted second-degree murder and remand for a new trial. Finally, we hold that it was constitutional for the trial court to enhance Defendant's sentence based on aggravating circumstances found by the court and not a jury based on this Court's recent opinion in *State v. Lopez*, 2005–NMSC–036, 138 N.M. 521, 123 P.3d 754.

## I. DEFENSE OF ANOTHER JURY INSTRUCTION

{3} Defendant argues the trial court erred in refusing to instruct the jury on defense of another for the shooting of Washington and killing of Scott. An instruction on defense of another should be given if "the evidence is sufficient to allow reasonable minds to differ as to all elements of the defense." *State v. Lopez*, 2000–NMSC–003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (internal

---

1. The jury also found, beyond a reasonable doubt, that Defendant used a firearm in committing the second-degree murder against Scott and the attempted second-degree murder against Washington. *See* UJI 14–6013 NMRA. Each firearm enhancement carries a sentence increase of one year. NMSA 1978, § 31–18–16(A) (1993).

citation omitted); *see also State v. Coffin*, 1999–NMSC–038, ¶ 12, 128 N.M. 192, 991 P.2d 477 (stating that the possible existence of such a reasonable belief is why we recognize self-defense as a complete justification to homicide). Failure to instruct a jury on a defendant's theory of the case is reversible error. *State v. Brown*, 1996–NMSC–073, ¶ 34, 122 N.M. 724, 931 P.2d 69.

{4} To receive the defense of another instructions for the shooting of Washington and killing of Scott, Defendant would have had to present sufficient evidence there was an appearance that Jessica Runningwater ("Jessica") was in immediate danger of death or great bodily harm from Washington or Scott, and that Defendant's actions would have prevented such harm. *See* UJI 14–5184 NMRA. Defendant failed to present such evidence as to either the shooting of Washington or the killing of Scott.

■ {5} Defendant testified that on the night of the shooting, Washington came looking for Washington's girlfriend, Jessica, at the trailer where Defendant was partying with Jessica and others. Defendant testified that he was outside the trailer urinating when Washington and his friends arrived and entered the trailer. After hearing screams coming from inside the trailer, Defendant testified he reentered the trailer and saw "Washington ... standing over [Jessica] hitting her in the head." Defendant testified he grabbed Washington by the arm and told him to stop beating Jessica, and that Washington ordered Jessica outside. Once outside, Defendant testified he saw Washington grab Jessica by the hair, hit her in the head again and then chase Jessica around the vehicles parked in front of the trailer. According to Defendant, because Jessica was screaming for his help, he told Washington, "you want to hit on the woman, hit on me." Defendant testified he then pushed Washington, who fell back away from him. After falling back, Defendant testified Washington came toward him "coming out of his waistline area" as though he were pulling a pistol. Defendant testified, "At first when we were all out there arguing, I thought it was just

going to be a little scrap or scuffle ... and that was it. But when I seen him go for the gun, I was scared." Defendant also testified, "In my mind, when I seen his hand go for his crotch area, I thought he had a pistol. That's the only reason I shot at him." Although the evidence shows Jessica was clearly at risk of some injury, it does not support the view that Defendant believed Jessica was in imminent danger of death or great bodily harm so as to warrant a defense of another instruction for the shooting of Washington.

■ {6} Even less testimony was offered by Defendant to support an instruction for defense of another for the killing of Scott. Defendant testified that "[Scott] wasn't the violent one.... Only reason I shot [Scott] is because he went to the car and he was coming back and ... he looked like he had ... a gun in his hand." This evidence does not support an instruction for defense of another for the killing of Scott, as it does not support any appearance of imminent death or great bodily harm to Jessica.[2]

{7} Viewing the evidence in the light most favorable to giving the requested instruction, *see State v. Hill*, 2001–NMCA–094, ¶ 5, 131 N.M. 195, 34 P.3d 139, we hold Defendant did not present sufficient evidence to allow reasonable minds to differ as to all elements of the defense of another. We affirm the trial court's decision not to instruct the jury on defense of another.

## II. ATTEMPTED VOLUNTARY MANSLAUGHTER JURY INSTRUCTION

{8} Defendant was charged with attempt to commit murder against Washington. While the parties and the court were settling jury instructions, Defendant's attorney tendered an instruction entitled "attempt to commit the crime of manslaughter." However, the tendered instruction included only the elements for an "attempt to commit a felony" instruction. *See* UJI 14–2801 NMRA (requiring the State to prove beyond a reasonable doubt that: (1) the defendant intended to commit the crime; (2) the defendant began to do an act which constituted a substan-

---

2. On the other hand, both this evidence and that relating to the shooting of Washington do sup-

port a self-defense instruction, which the court gave at the request of Defendant.

tial part of the crime but failed to commit the crime; and (3) the attempt took place on a certain date). Defendant argued below, and now argues on appeal, that because the court was going to instruct the jury on attempted second-degree murder, there was evidence of sufficient provocation to entitle him to an instruction on "attempted manslaughter."

## A. DEFENDANT ADEQUATELY PRE-SERVED THE ISSUE FOR REVIEW

{9} The State's primary argument is that Defendant failed to properly preserve this issue for review because his tendered instruction was an incorrect statement of the law. The instruction tendered by the Defendant was for "attempt to commit the crime of manslaughter." Thus, the State contends that since "attempted manslaughter" is not a crime in New Mexico, the tendered instruction was an incorrect statement of the law. Defendant claims that it was clear from the discussions that the attorneys and the judge knew he was asking for an "attempted voluntary manslaughter" instruction. The State points out that Defendant also did not tender an instruction defining the elements of attempted voluntary manslaughter. The trial court indicated that aggravated battery was the appropriate instruction and refused the tendered instruction.

■■■■■■   {10} Generally, to preserve error on a trial court's refusal to give a tendered instruction, the Appellant must tender a legally correct statement of the law. *State v. Foster*, 1999–NMSC–007, ¶ 54, 126 N.M. 646, 974 P.2d 140. However, if the record reflects that the judge clearly understood the type of instruction the Defendant wanted and understood the tendered instruction needed to be modified to correctly state the law, then the issue is deemed preserved for appellate review. *Hill*, 2001–NMCA–094, ¶ 7, 131 N.M. 195, 34 P.3d 139. The rationale for allowing such flexibility regarding preservation is reinforced by the actual purpose of Rule 5–608(D) NMRA,[3] which is to alert the trial court to the defendant's argument. *See Hill*, 2001–NMCA–094, ¶ 7, 131 N.M. 195, 34 P.3d 139.

■■   {11} The record in this case demonstrates that the judge understood Defendant was asking for an "attempted voluntary manslaughter" instruction. *See id.* The following discussion took place with respect to Defendant's requested instruction number 10, "attempt to commit the crime of manslaughter":

Ms. Stevens (State's Attorney): I would strongly object to that. Manslaughter is simply—it's second-degree murder reduced because of provocation. There wouldn't be an attempted manslaughter. Would be an aggravated battery. Which is that he knew his acts created a strong probability of great bodily harm. That's aggravated battery.

Mr. Mitchell (Defendant's Attorney): And I think in that instance manslaughter applies. And besides this is a case regarding provocation.

Ms. Stevens: If you read the elements of manslaughter, though, there's no way to commit attempted manslaughter. Without it simply being aggravated battery.

The Court: [A]ggravated battery ... most accurately covers that situation. Rather than attempt to commit manslaughter a more appropriate (inaudible) would be aggravated battery. Defense requested instruction number 10 will be refused.

Because voluntary manslaughter is second-degree murder committed with sufficient provocation, UJI 14–220 NMRA; *see also State v. Gaitan*, 2002–NMSC–007, ¶ 11, 131 N.M. 758, 42 P.3d 1207, Ms. Stevens' comment that "[m]anslaughter is simply—it's second-degree murder reduced because of provocation" demonstrates that the State understood the discussion was about voluntary manslaughter. Additionally, Defendant's attorney stated this was a case about provocation. Because the parties were discussing the tendered instruction in the context of the issue of provocation, it is clear the judge understood Defendant was asking for an instruction on "attempted voluntary manslaughter."

3. Rule 5–608(D) reads "[F]or the preservation of error in the charge ... a correct written instruc-

tion must be tendered before the jury is instructed."

{12} The fact that Defendant tendered a separate instruction for "attempt to commit the crime of involuntary manslaughter" is further evidence that the court understood Defendant was also asking for an instruction on attempted voluntary manslaughter. New Mexico recognizes two types of manslaughter: voluntary and involuntary. NMSA 1978, § 30-2-3 (1994); *State v. Alvarado*, 1997-NMCA-027, ¶ 3, 123 N.M. 187, 936 P.2d 869. Because New Mexico only recognizes two types of manslaughter, and in light of the additional instruction for attempted involuntary manslaughter requested by the Defendant, it is only logical that the court and the parties understood that Defendant's requested instruction number 10, "attempt to commit the crime of manslaughter," was an instruction for attempted voluntary manslaughter. Defendant's tendered instruction was not refused because Defendant failed to include the word "voluntary," but rather because the trial court was persuaded that the appropriate step-down instruction from attempted second-degree murder was aggravated battery.

{13} The present case is analogous to *Hill*, in which the Court of Appeals held the defendant had preserved his argument for a self-defense instruction for appellate review. 2001-NMCA-094, ¶ 7, 131 N.M. 195, 34 P.3d 139. The defendant in *Hill*, who was convicted of battery on a police officer, requested a self-defense instruction that was refused by the trial court. *Id.* ¶ 1. On appeal, the State argued the defendant failed to preserve the issue for review because the instruction he tendered did not accurately state the law with respect to self-defense against a peace officer. *Id.* ¶ 6. The Court of Appeals acknowledged that the self-defense instruction was flawed on its face. *Id.* ¶ 7. However, the court was persuaded that the trial court understood the type of instruction the defendant wanted. Because the trial court understood what instruction the defendant sought, the Court of Appeals explained that the trial court should have modified the instruction to correctly state the law. *Id.; see Gallegos v.*

*State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992) (concluding that the purpose of the Rule 5-608(D) language "is to allow the court an opportunity to decide a question whose dimensions are not open to conjecture or after-the-fact interpretation"). The Court of Appeals held that despite the fact the tendered self-defense instruction was flawed on its face, the defendant made a sufficient record to preserve review because the trial court understood what instruction the defendant sought and had the opportunity to modify the instruction to correctly state the law. *Hill*, 2001-NMCA-094, ¶ 7, 131 N.M. 195, 34 P.3d 139.

{14} We also reject the State's argument that Defendant did not preserve the issue when he failed to tender an instruction defining the elements of attempted voluntary manslaughter. It does not seem to us that the trial court was troubled by Defendant's failure to submit such an instruction. During discussions regarding Defendant's requested instruction number 9, "attempt to commit second-degree murder," in addition to objecting to the propriety of giving the instruction, the State pointed out that, as written, the instruction did not provide the elements of the crime. Once the trial court agreed to instruct the jury on attempted second-degree murder, the court modified Defendant's instruction to include the elements for attempted second-degree murder. Had the trial court believed it was appropriate to instruct the jury on attempted voluntary manslaughter, we are convinced the trial court would have modified the instruction to correctly state the law, by including all of the essential elements for the crime.[4] *See* UJI 14-2801 NMRA.

{15} The record reflects the judge understood Defendant wanted an attempted voluntary manslaughter instruction and had an opportunity to modify the instruction to correctly state the law, but did not give the tendered instruction because he believed aggravated battery to be the correct step-down

---

4. The use notes for the uniform jury instructions on attempt require a separate attempt instruction for each applicable felony. UJI 14-2801, use note 1. Each attempt instruction must be imme-

diately followed by the essential elements of the felony, unless the elements are already listed in a separate instruction relating to the completed offense. *Id.*

instruction. Therefore, we hold that Defendant properly preserved the issue for appeal.

## B. ATTEMPTED VOLUNTARY MAN-SLAUGHTER MAY BE A CRIME IN NEW MEXICO

{16} Jurisdictions that have considered whether attempted voluntary manslaughter exists are split. 40 Am.Jur.2d *Homicide,* § 48 (2004). Jurisdictions that recognize attempted voluntary manslaughter as a crime do so because if circumstances can mitigate an intentional killing, and reduce it from an intentional murder to voluntary manslaughter, it is logical to reduce an attempted intentional murder to attempted voluntary manslaughter when similar circumstances are present but the defendant fails to carry out his intent. *See People v. Van Ronk,* 171 Cal.App.3d 818, 217 Cal.Rptr. 581, 585 (1985) ("There is nothing illogical or absurd in a finding that a person who unsuccessfully attempted to kill another did so with the intent to kill which was formed in the heat of passion or which arose out of an honest but unreasonable belief in the necessity of self-defense."); *see also State v. Norman,* 580 P.2d 237, 240 (Utah 1978) *overruled on other grounds by State v. Standiford,* 769 P.2d 254 (Utah 1988); *State v. Barnes,* 162 Ariz. 92, 781 P.2d 69, 70 (Ct.App.1989); *State v. Rainey,* 154 N.C.App. 282, 574 S.E.2d 25, 30 (2002); *Kauffman v. State,* 729 So.2d 424, 425 (Fla.Dist.Ct.App.1999); *Ex parte Buggs,* 644 S.W.2d 748, 750 (Tex.Crim.App.1983) (en banc).

{17} Jurisdictions that refuse to recognize attempted voluntary manslaughter as a crime do so because they conclude it would be illogical to apply the crime of attempt, a specific intent crime, to the general intent crime of voluntary manslaughter. *See State v. Howard,* 405 A.2d 206, 212 (Me.1979) ("The crime of manslaughter . . . is predicated upon a different mental state from that found in the attempt statute. . . . Because of the discrepancy in culpable mental states between criminal attempt on the one hand and manslaughter on the other, the proffered crime of 'attempted manslaughter' is a logical impossibility."); *see also People v. Brown,* 21 A.D.2d 738, 739, 249 N.Y.S.2d 922 (N.Y.App.

Div.1964); *Westbrook v. State,* 722 So.2d 788, 792 (Ala.Crim.App.1998); *State v. Loa,* 83 Hawai'i 335, 926 P.2d 1258, 1273 (1996); *People v. Martinez,* 81 N.Y.2d 810, 595 N.Y.S.2d 376, 611 N.E.2d 277, 278 (1993); *Curry v. State,* 106 Nev. 317, 792 P.2d 396, 397 (1990); *People v. Stevenson,* 198 Ill.App.3d 376, 144 Ill.Dec. 555, 555 N.E.2d 1074, 1078 (1990).

{18} Although we have implicitly recognized attempted voluntary manslaughter as a crime, we have never squarely held it exists in New Mexico. *See State v. Stampley,* 1999–NMSC–027, ¶ 48, 127 N.M. 426, 982 P.2d 477 (remanding for a new trial on the charge of attempted first-degree murder by deliberate killing, to include instructions on attempted second-degree murder by intentional killing and attempted voluntary manslaughter); *State v. Durante,* 104 N.M. 639, 643, 725 P.2d 839, 843 (Ct.App.1986) (finding defendant was not entitled to attempted voluntary manslaughter instruction when defendant created the provocation that would reduce the crime from murder to manslaughter). As in other jurisdictions that have specifically considered whether attempted voluntary manslaughter is a crime, our holding today turns on whether voluntary manslaughter is a specific intent or a general intent crime. We agree that it is illogical to apply attempt, a specific intent crime, to a general intent crime. *State v. Johnson,* 103 N.M. 364, 367–68, 707 P.2d 1174, 1177–78 (Ct.App.1985). Generally speaking, voluntary manslaughter is a general intent crime. *See State v. Beach,* 102 N.M. 642, 645, 699 P.2d 115, 118 (1985) (holding, as a matter of statutory definition, that voluntary manslaughter does not contain an element of intent to do a further act or achieve a further consequence). However, voluntary manslaughter is second-degree murder committed with sufficient provocation. *See State v. Aragon,* 35 N.M. 198, 292 P. 225 (1930). While second-degree murder is commonly held to be a general intent crime in New Mexico, *see State v. Campos,* 1996–NMSC–043, ¶ 38, 122 N.M. 148, 921 P.2d 1266, second-degree murder has been held to be a specific intent crime under limited circumstances. *Johnson,* 103 N.M. at 370, 707 P.2d at 1180 (holding that where a defendant fire bombed a mobile home intend-

ing to kill someone inside, but knowing that his act created the requisite probability of death or great bodily harm with respect to unknown persons inside, defendant's act could constitute sufficient evidence to convict him of attempted second-degree murder as to the unknown persons). Thus, for the same reasons that in some limited circumstances second-degree murder can be a specific intent crime, *see id.*, under similar limited circumstances voluntary manslaughter may also be a specific intent crime if provocation is at issue. Under such limited circumstances, it is logical to offer an attempted voluntary manslaughter instruction where the court finds it appropriate to offer an attempted second-degree murder instruction and sufficient provocation is an issue.

{19} The trial court in this case, over the State's objection, instructed the jury on attempted second-degree murder. An appropriate instruction for attempted second-degree murder would consist of an instruction on attempt, UJI 14–2801 NMRA, immediately followed by the elements for second-degree murder, UJI 14–210 NMRA. *See* UJI 14–2801 NMRA note 1; *Johnson,* 103 N.M. at 370–71, 707 P.2d at 1180–81. This sequence for instructing the jury on attempted second-degree murder adequately instructs the jury on attempted second-degree murder as a specific intent crime. *Id.* at 371, 707 P.2d at 1181. Here, we are persuaded the trial court instructed the jury on attempted second-degree murder as a specific intent crime. Otherwise, it would have been error for the court to instruct the jury on attempted second-degree murder, *see id.*, and the appropriate step-down instruction from attempted first-degree murder would have been aggravated battery. *State v. Meadors,* 121 N.M. 38, 44, 908 P.2d 731, 737 (1995).

{20} We hold that under limited circumstances, where attempted second-degree murder is offered as a greater-included offense and sufficient provocation is at issue in the trial, attempted voluntary manslaughter is a crime in New Mexico. Among the elements of the jury instruction for attempted second-degree murder was the requirement that the jury find "[t]he defendant did not act as a result of sufficient provocation." This

language is included in a second-degree murder instruction *only* when provocation is an issue. UJI 14–210 NMRA, use note 1. When provocation is at issue, an instruction on voluntary manslaughter must be given. UJI 14–210 NMRA, use note 4. Therefore, the trial court should have instructed the jury on attempted voluntary manslaughter if it found evidence of sufficient provocation.

## C. EVIDENCE OF SUFFICIENT PROVOCATION EXISTED TO SUPPORT AN ATTEMPTED VOLUNTARY MANSLAUGHTER INSTRUCTION

{21} We next determine whether there was evidence of sufficient provocation to support an attempted voluntary manslaughter instruction. Failure to instruct the jury on a lesser included offense of a charged offense is reversible error if: (1) the lesser offense is included in the greater, charged offense; (2) there is evidence tending to establish the lesser included offense and that evidence establishes that the lesser offense is the highest degree of crime committed; and (3) the defendant has tendered appropriate instructions preserving the issue. *Hill,* 2001–NMCA–094, ¶ 16, 131 N.M. 195, 34 P.3d 139 (internal citation omitted).

{22} Just as voluntary manslaughter is a lesser included offense of second-degree murder, *see State v. Duarte,* 1996–NMCA–038, ¶ 1, 121 N.M. 553, 915 P.2d 309 (noting that while defendant was charged with second-degree murder, he was convicted of the lesser included offense of voluntary manslaughter), we recognize that attempted voluntary manslaughter is a lesser included offense of attempted second-degree murder where sufficient provocation is at issue in the trial. As to the third requirement, we stated above that the Defendant has preserved the issue for appeal. The second requirement is the only remaining issue, so our analysis is limited to whether evidence of sufficient provocation was presented at trial to support the attempted voluntary manslaughter instruction.

{23} With regard to the second requirement, we consider whether "there is a rational view of the evidence that would lead

the jury to conclude beyond a reasonable doubt that Defendant committed the lesser included offense while still harboring a reasonable doubt that Defendant committed the charged offense." *See Hill*, 2001–NMCA–094, ¶ 17, 131 N.M. 195, 34 P.3d 139 (internal citation omitted). That Defendant here was convicted of attempted second-degree murder with regard to Washington is evidence that the jury rejected the State's argument that Defendant exhibited the requisite degree of intent necessary to convict him of attempted-first degree murder. Therefore, we need only consider whether there is evidence of sufficient provocation so that the jury could have concluded beyond a reasonable doubt that Defendant committed attempted voluntary manslaughter while still harboring a reasonable doubt that Defendant committed attempted second-degree murder.

{24} Sufficient provocation is defined as "any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions." UJI 14–222 NMRA. "The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." *Id.* Evidence of provocation exists to support a voluntary manslaughter instruction where the defendant feared the victim was attempting to get a gun with which to shoot the defendant, and the defendant acted to prevent the victim from getting the gun. *See State v. Wright*, 38 N.M. 427, 429, 34 P.2d 870, 871 (1934). Similarly, such evidence should also support an attempted voluntary manslaughter instruction.

{25} In this case, Defendant's testimony that he was scared when he believed Washington was reaching for a gun provides evidence of sufficient provocation to support an attempted voluntary manslaughter instruction. *See State v. Abeyta*, 120 N.M. 233, 240, 901 P.2d 164, 171 (1995) ("It is not unreasonable that the accused should be found guilty of voluntary manslaughter where the plea of self-defense fails.") (internal citations omitted). Defendant's testimony could not have been clearer when he stated "[W]hen I seen him go for the gun, I was scared," and "[i]n my mind, when I seen

his hand go for his crotch area, I thought he had a pistol. That's the only reason I shot at him." Defendant further stated, "Where I'm from, somebody coming out of that area [the waistline] . . . it's more than likely . . . that they are going to shoot you." We note also that the judge instructed the jury on voluntary manslaughter regarding the killing of Scott, presumably based on Defendant's testimony that he thought Scott had a gun. Viewing the evidence in the light most favorable to giving the requested instruction, *Hill*, 2001–NMCA–094, ¶ 5, 131 N.M. 195, 34 P.3d 139, we hold Defendant presented evidence of sufficient provocation to support an attempted voluntary manslaughter jury instruction. Accordingly, we reverse Defendant's conviction for attempted second-degree murder with regard to Count II, and remand to the trial court for a new trial on this count.

### III. SECTION 31–18–15.1 IS CONSTITUTIONAL

{26} The jury convicted Defendant of three crimes: (1) second-degree murder, a second-degree felony, which carries a basic sentence of fifteen years imprisonment; (2) attempted second-degree murder, a third-degree felony, which carries a basic sentence of three years imprisonment; and (3) tampering with evidence, a fourth-degree felony, which carries a basic sentence of eighteen months. NMSA 1978, § 31–18–15 (2003). After the trial, the State gave notice that it intended to seek enhanced sentences for each of the three counts against Defendant under NMSA 1978, § 31–18–15.1 (2003), based on several aggravating circumstances: (1) level of anger and ill will displayed toward the victims; (2) gang affiliation and criminal history from the age of 14; (3) avoiding prosecution by fleeing the jurisdiction, and using false aliases, birth dates and social security numbers; (4) inciting disorder and turmoil while incarcerated; and (5) showing no remorse. At the sentencing hearing, the State introduced testimony from Washington and two members of Scott's family, all of whom spoke of how the shooting impacted their lives, two Otero County Detention Center employees, who spoke of Defendant's non-

compliant behavior while in detention, a detective from Las Vegas, Nevada who testified about Defendant's use of aliases, and a Los Angeles County detective, who testified about Defendant's criminal history from 1993 to 1998. Of these witnesses, only Washington had testified at trial.

{27} The judge enhanced Defendant's sentences beyond the basic sentences authorized in Section 31–18–15 after finding seven aggravating factors: (1) Defendant hunted the victims; (2) Defendant fired multiple gun shots toward the victims; (3) Defendant was acting as an enforcer for a drug dealer; (4) Defendant was the aggressor and had violence on his mind all day; (5) Defendant's actions showed extreme anger and ill will toward the victims; (6) Defendant avoided prosecution by using aliases and by fleeing the jurisdiction; and (7) Defendant has failed to accept responsibility for his own actions or show remorse. Defendant's sentence was increased by six and one-half years due to the finding of aggravating circumstances.

{28} At issue here is whether the sentence enhancements authorized by Section 31–18–15.1 are constitutional in light of the United States Supreme Court's recent holdings in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). This Court recently held in *State v. Lopez,* 2005–NMSC–036, 138 N.M. 521, 123 P.3d 754, that Section 31–18–15.1 is constitutional. In doing so, we affirmed the Court of Appeals opinion in *State v. Wilson,* 2001–NMCA–032, 130 N.M. 319, 24 P.3d 351, which was relied on by the Court of Appeals in this case. Accordingly, we affirm the Court of Appeals on this issue.

## CONCLUSION

{29} We hold Defendant did not present sufficient evidence to support a defense of another jury instruction for either the killing of Scott or the shooting of Washington. Therefore, we affirm Defendant's conviction for the second-degree murder of Scott. Defendant properly preserved the issue of whether he should have been given an attempted voluntary manslaughter instruction because the judge understood Defendant was asking for such an instruction, and the judge had an opportunity to modify the instruction to correctly state the law. Additionally, we hold that under limited circumstances, where attempted second-degree murder is offered as a greater-included offense and sufficient provocation is at issue in the trial, attempted voluntary manslaughter may be a crime in New Mexico. Defendant presented evidence of sufficient provocation to support an attempted voluntary manslaughter jury instruction. Therefore, we reverse Defendant's conviction for attempted second-degree murder with regard to Count II, and remand to the trial court for a new trial on this count. Finally, Section 31–18–15.1 is constitutional.

{30} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, and PATRICIO M. SERNA, Justice.

PAMELA B. MINZNER, Justice
(concurring in part and dissenting in part).

PETRA JIMENEZ MAES, Justice
(concurring in part and dissenting in part).

MINZNER, J. (concurring in part and dissenting in part).

{31} I concur in part and dissent in part. I concur in affirming Defendant's conviction for second-degree murder. I respectfully dissent from the decision to reverse Defendant's conviction for attempted second-degree murder. I also concur in affirming the enhancement of Defendant's sentence pursuant to NMSA 1978, § 31–18–15.1 (1993). I would affirm both convictions from which Defendant has appealed, as well as the judgment and sentence. Because I concur in the analysis within Sections I and III of the Opinion, I will discuss only Section II.

{32} Although I agree with most of the analysis in Section II, I am not persuaded that Defendant was entitled to an instruction on attempted voluntary manslaughter. I would hold there was insufficient evidence of the extreme emotion, sufficient to cause a loss of self-control, on which UJI 14–222 NMRA 2006, defining provocation, instructs the jury. The Majority Opinion relies on the concept of imperfect self-defense, *see State v.*

*Abeyta,* 120 N.M. 233, 901 P.2d 164 (1995), but the Opinion seems to overlook the uniform jury instruction requirement that the action to which a defendant was responding aroused an extreme emotion. The Opinion describes Defendant's testimony as very clear, *see* ¶ 25, but there is no hint within that testimony that Defendant's ability to reason was affected. Unlike the testimony in *State v. Wright,* 38 N.M. 427, 34 P.2d 870 (1934), to which the Majority Opinion refers in ¶ 24, there was no testimony that Defendant was afraid of the victim, that he was afraid of being shot, or that he was unable to reason as a result of his fear.

{33} The Majority Opinion suggests and perhaps actually holds that the same facts that give rise to an instruction on self-defense will give rise to an instruction on provocation. Yet the concepts are different. *See generally State v. Parish,* 118 N.M. 39, 46, 878 P.2d 988, 995 (1994) ("Either the Defendant is guilty of having been provoked into voluntary manslaughter or he is innocent because he killed in self-defense."). In *Parish,* this Court noted the potential for confusion, but we suggested that if juries are instructed that they must acquit if they are satisfied a defendant acted in self-defense, then jury confusion on the difference between the effect of finding provocation and the effect of finding self-defense can be avoided. *Id.* at 47, 878 P.2d at 996.

{34} The Majority Opinion leads me to the conclusion that, in addition to the kind of instruction *Parish* recommends, recognition of attempted voluntary manslaughter requires us to approve new jury instructions. If facts that support imperfect self-defense always justify an instruction on provocation, we at least need an instruction on provocation that fits the circumstances in which, based on evidence supporting an imperfect self-defense claim, the jury should receive a step-down instruction from attempted second-degree murder to attempted voluntary manslaughter. *See generally* Leo M. Romero, *Sufficiency of Provocation for Voluntary Manslaughter in New Mexico: Problems in Theory and Practice,* 12 N.M. L.Rev. 747, 756 (1982) (arguing that our uniform jury instructions permit us to distinguish proof of sufficient provocation "when it serves as a mitigating defense to murder").

{35} Professor Romero notes, as he begins the discussion of our cases, that "[t]he evidence of provocation and heat of passion sufficient to require or merit an instruction on voluntary manslaughter in New Mexico is not clear." *Id.* at 752. He argues that we ought to distinguish the standard for determining whether there is enough evidence to support a voluntary manslaughter conviction when charged or tried separately from the standard for determining whether there is enough evidence to support giving an instruction on voluntary manslaughter as a lesser included instruction. *See id.* at 754–55. He also argues that constitutional due process actually requires recognizing the dual role of voluntary manslaughter, *id.* at 760, which is both a lesser included offense and a separate crime, "with additional and different elements from murder." *Id.* He concludes his article, however, with the following:

> Voluntary manslaughter could then operate as both a mitigating defense and a crime at the same time. The drafters of the Uniform Jury Instructions attempted such a compromise in the instructions on murder and voluntary manslaughter. Instructions, however, cannot change the statutory definition of voluntary manslaughter. The responsibility rests with the legislature. The homicide law in New Mexico should be revised to resolve the contradiction in the murder-manslaughter scheme.

*Id.* at 789.

{36} I am persuaded that we ought to recognize, as Professor Romero argues, the right to an instruction on voluntary manslaughter as a lesser included offense of second-degree murder in circumstances other than those in which the statutory definition of voluntary manslaughter has been satisfied. *See generally* NMSA 1978, § 30–2–3(A) (1994) (defining voluntary manslaughter as "manslaughter committed upon a sudden quarrel or in the heat of passion"). I also agree that we ought to recognize the existence of the crime of attempted voluntary manslaughter and concur in the analysis within Section II(B).

{37} I appreciate the careful way in which the Majority Opinion discusses the issue of

preservation within Section II(A). Nevertheless, I am not persuaded that the issue on which the Majority Opinion reverses Defendant's conviction for attempted second-degree murder was preserved. In *Abeyta*, this Court indicated that when both self-defense and imperfect self-defense are argued, an instruction clarifying the role of each should be given. 120 N.M. at 241, 901 P.2d at 172 (indicating the jury must be told that it must acquit if it finds a defendant acted in self-defense in order to avoid conflicting instructions). Such an instruction was not tendered in this case. In addition, as the Majority Opinion notes, one of the reasons we can conclude, on these facts, that attempted voluntary manslaughter is a lesser included offense is the fact that we believe second-degree murder of the intentional kind was the type on which the jury was instructed. *See* Maj. Op. ¶ 19. That fact is not something Defendant argued. In addition, Defendant's argument on appeal, and thus perhaps at trial, seems to rely not only on the evidence that he thought the victim had a gun, but also that he was provoked by the victim's treatment of Jessica Runningwater. Finally, the Majority Opinion reaches a conclusion about the availability of an instruction on provocation that seems to have required a different instruction than the instruction Defendant tendered. *See* Maj. Op. ¶ 8. Defendant tendered an instruction that would ask the jury a question I am not persuaded the evidence actually supports. He did not tender an instruction that would have asked the question the Majority Opinion concludes he was entitled to have answered.

{38} For these reasons, I concur in Sections I, II(B), and III. I respectfully dissent from Sections II(A) and II(C). I would affirm the convictions Defendant has challenged on appeal and the judgment and sentence entered on the jury's verdict. The majority being of a different view, I concur in part and dissent in part.

I CONCUR: PETRA JIMENEZ MAES, Justice.