This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                  **No. A-1-CA-35876**

**JOE ANDERSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**David N. Williams, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret Jayne Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}**     Defendant Joe Anderson appeals his conviction for voluntary manslaughter, contrary to NMSA 1978, § 30-2-3(A) (1994), arguing that the district court erred in refusing to instruct the jury on defense of another. We affirm.

## BACKGROUND

**{2}**     In the early morning hours of November 2010 Defendant and Vicente Sanchez (Victim) were at a family housewarming party for two of Defendant's cousins. Both

Defendant and Victim were armed. Victim arrived at the party with his girlfriend, Janessa Trujillo, and a group of their friends. Prior to arriving, Victim used painkillers, heroin, cocaine, and consumed alcohol. While most of the guests were Defendant's relatives, Defendant did not know Victim or anyone in his group. The atmosphere at the party was friendly until Victim and his friends decided to leave and an altercation ensued between Victim and Defendant. What happened next was disputed at trial but it was undisputed that Defendant shot and killed Victim.

## A. Defendant's Testimony

{3}     At trial, Defendant began his testimony by describing his initial encounter with Victim. According to Defendant, Victim appeared intoxicated and stared at him "like he was all mad or . . . didn't like [him]." Defendant then approached Victim and said, "[N]obody [is] trying to cause no problems." Victim initiated the physical altercation by punching Defendant and causing him to fall backwards onto a glass table in the living room. The glass table shattered. While Defendant was lying on the table, someone pulled Defendant's shirt over his head, and others began hitting him. Eventually the hitting stopped and Defendant got up off the table and pulled his shirt from his face.

{4}     After he got up from the table, Defendant saw Trujillo point the gun directly at him and she said to him, "Don't . . . move or I'll shoot you." As Defendant ducked to avoid being shot, Defendant heard Victim tell Trujillo "to pass him the gun." Defendant testified that he observed Victim reach for the gun and point it at him. In response, Defendant retrieved his gun from his back pocket and started shooting as he ran across the living room toward Victim. Defendant testified that he stood by the doorway to the kitchen when he pulled out his gun, but was only steps away from Victim when he began shooting. Defendant acknowledged that he did not stop shooting until his "gun ran out of bullets."

{5}     When Trujillo pointed the gun at Defendant, Defendant testified that he was in fear for his life and was concerned for his family's safety, all of whom were in the kitchen area and not the living room where Defendant and Victim were located. Defendant conceded that Victim did not point a gun at any of his family members and that there was a wall separating the kitchen from the dining room, and consequently, separating Victim and his family. Nonetheless he stated, "[A]ll my family was right there, so . . . if he started shooting, he was going to hit somebody in my family or me."

## B. State's Testimony

{6}     The State presented the testimony of several eyewitnesses that largely conflicted with Defendant's version of the facts. Three of the State's witnesses—Trujillo, Jesus Arvisu, and Franchesca Cadena—testified that Defendant and Victim were in the kitchen having an argument, which ultimately led to an altercation that ended in the living room. Arvisu testified that, while in the living room, he, Defendant's cousin Richard, and possibly one other unidentified person, became involved in the altercation between Victim and Defendant. Trujillo explained that she stood between Victim and

Defendant in an attempt to get Victim to leave, but Defendant pushed her aside. Trujillo then saw Defendant push Victim, who responded by punching Defendant, causing him to fall into the living room on top of a glass table.

**{7}** According to Trujillo, the fighting ceased after she grabbed Victim's gun from his waistband, pointed it at Defendant's cousin Richard, who she believed had a gun as well, and said, "Everyone back the . . . up." Trujillo testified that after a couple of seconds, the fighting resumed. Two witnesses, Arvisu and Trujillo, testified that as Trujillo was swinging the gun an older man, who Trujillo believed was Richard's father, took the gun away from her. Almost at the same time, according to four State witnesses, Defendant went into the kitchen, retrieved a gun, and came back into the living room. Trujillo testified that Richard and Victim were fighting on the couch when Defendant returned to the living room.

**{8}** When Defendant came from the kitchen armed with a gun, Trujillo saw Victim huddle into a ball at which point Defendant shot Victim multiple times. Consistent with this testimony, Victim received three gunshot wounds to the back of his head and one to the right cheek. Not a single State's eyewitness testified that they saw Victim holding a gun after Trujillo grabbed the gun from him at the outset of the altercation.

**{9}** At the close of trial, the district court instructed the jury on second degree murder and voluntary manslaughter. The court also instructed the jury on self-defense but denied Defendant's request on a defense of another instruction.[1] The jury found Defendant guilty of the lesser included offense of voluntary manslaughter. This appeal followed.

**DISCUSSION**

**{10}** Defendant argues that there was sufficient evidence to instruct the jury on defense of another based on his testimony that he feared Victim might shoot his family members. The State contends that there was no evidence that Defendant shot Victim while defending another person and thus, he was not entitled to a defense of another jury instruction. We agree with the State.

**{11}** "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Torrez*, 2013-NMSC-034, ¶ 24, 305 P.3d 944 (internal quotation marks and citation omitted). "[W]e review the evidence in the light most favorable [toward] giving . . . the requested instruction." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355. "When a defendant raises defense of another as a justification for his actions, an instruction on the defense should be given if there is

---

1Defendant requested a defense of another jury instruction, pursuant to both UJI 14-5172 NMRA (justifiable homicide; defense of another) and UJI 14-5184 NMRA (defense of another; deadly force by defendant). UJI 14-5184 use note 1 is "[f]or use in nonhomicide cases when the defense theory is based on a reasonable ground to believe a design exists to commit a felony [or] a reasonable ground to believe a design exists to do great bodily harm[.]" The only charge submitted to the jury was second degree murder and the lesser included offense of voluntary manslaughter. Because this was a homicide case, we solely address UJI 14-5172 in our analysis.

any evidence, even slight evidence, to support the claim." *State v. Mann*, 2000-NMCA-088, ¶ 17, 129 N.M. 600, 11 P.3d 564 (internal quotation marks and citation omitted). "Our Supreme Court has interpreted this standard to require evidence that is sufficient to allow reasonable minds to differ as to all elements of the defense." *Id.* (internal quotation marks and citation omitted). It is reversible error to fail to instruct the jury on a defendant's theory of the case only if the evidence at trial supported giving the instruction. *Boyett*, 2008-NMSC-030, ¶ 12. We analyze the need to give the defense of another instruction in the same manner as we would a request for a self-defense instruction. *State v. Sandoval*, 2011-NMSC-022, ¶ 16, 150 N.M. 224, 258 P.3d 1016.

**{12}** A defense of another jury instruction should be given when:

> (1) there was an appearance of death or great bodily harm to a person;
> (2) the defendant believed the person was in immediate danger of death
> or great bodily harm from the victim and killed the victim to prevent the
> death or great bodily harm; and (3) the apparent danger would have
> caused a reasonable person in the same circumstances to act as the
> defendant did.

*Id.* ¶ 17 (internal quotation marks and citation omitted); *see* UJI 14-5172 (justifiable homicide; defense of another). "The burden is on the state to prove beyond a reasonable doubt that the defendant did not act in defense of another." UJI 14-5172. "A defendant is not entitled to a [defense of another] instruction unless it is justified by sufficient evidence on every element of [the] defense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170.

**{13}** In *State v. Jernigan*, our Supreme Court held that there was insufficient evidence to instruct the jury on defense of another even though the evidence showed that the defendant's girlfriend "was clearly at risk of some injury." 2006-NMSC-003, ¶¶ 5, 7, 139 N.M. 1, 127 P.3d 537. Initially, the defendant intervened because the victim was attacking his girlfriend. *Id.* ¶ 5. However, when the defendant shot the victim, the victim was approaching him and reached into his waistband, leading the defendant to believe he was reaching for a gun. *Id.* The Court reasoned that the evidence did "not support the view that [the d]efendant believed [the girlfriend] was in imminent danger of death or great bodily harm" because when the defendant shot the victim he did so because the victim was approaching him. *Id.*

**{14}** Like in *Jernigan*, the evidence does not support Defendant's contention that merely because of the proximity between his family and Victim, his family was in immediate danger of death or great bodily harm. Defendant admitted he was in a different room than his family when the events preceding the shooting occurred. While Trujillo testified that Richard was on the couch during the shooting, there was no testimony suggesting that Victim threatened Richard in any way.

**{15}** Similar to the circumstances in *Jernigan*, there is nothing in the record to indicate that Victim was about to inflict great bodily harm or death on Defendant's family

members at the time of the shooting. Indeed, the record is devoid of any evidence that Victim pointed the gun at or otherwise threatened Defendant's family, a fact that Defendant himself agreed with in his testimony. Thus, the evidence established that the only person Defendant conceivably could have been trying to protect by shooting Victim was himself. *See State v. Torrez*, 2013-NMSC-034, ¶ 37, 305 P.3d 944 (holding that there was insufficient evidence to support a defense of another instruction because although the defendant's friends were in a nearby vehicle, the evidence only established that the defendant shot the victim to protect himself)*.*

**{16}** Similar to our Supreme Court's conclusion that there was no immediate threat of great bodily harm to the defendant's girlfriend in *Jernigan*, 2006-NMSC-003, ¶ 6, we cannot say that under these facts, Defendant's family was in imminent danger. Therefore, we hold that here was insufficient evidence to warrant instructing the jury on defense of another.

**CONCLUSION**

**{17}** For the aforesaid reasons, we affirm.

**{18}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JENNIFER L. ATTREP, Judge**