This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **No. 28,914**

**LANCE TUNGOVIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed Sheperd, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

{1}     Defendant appeals his convictions for second degree murder, attempted first degree murder, second degree shooting at or from a motor vehicle, and child abuse.

Defendant raises seven issues on appeal. We hold that Defendant was entitled to a step-down jury instruction on the lesser included offense of attempted second degree murder and accordingly reverse and remand Defendant's attempted first degree murder conviction. We further hold that Defendant's convictions for both second degree murder and shooting at or from a motor vehicle resulting in great bodily harm violate double jeopardy. Finding no error in Defendant's remaining contentions, we otherwise affirm.

## BACKGROUND

{2}     Defendant's charges arose out of an incident in which Defendant shot and killed victim Aaron Chavez after Chavez punched Defendant and attempted to grab Defendant's gun. Defendant fired at least six bullets during the affray, four of which entered the passenger side of the van where Chavez's passenger, Michael Sedillo, had been sitting. Because this is a memorandum opinion and because the parties are familiar with the procedural history and facts of the case, we reserve further discussion of pertinent facts for our analysis.

## DISCUSSION

### Defendant's Requested Jury Instructions

{3}     Defendant was charged with attempted first degree murder for shooting into the van previously occupied by Sedillo. Sedillo fled the van when Defendant began

2

shooting Chavez, but the State's theory underlying this charge was that Defendant believed Sedillo was still in the van and deliberately shot into the van to kill Sedillo. Defendant contends that attempted second degree murder and attempted voluntary manslaughter are lesser included offenses of the attempted first degree murder charge and tendered jury instructions for these offenses to the district court. Defendant also tendered an instruction for defense of others in regard to his shooting of Chavez. Defendant contends that the district court erred in refusing to submit these requested instructions to the jury.

**Standard of Review**

{4}     We review de novo the propriety of jury instructions given or denied. *State v. Munoz*, 1998-NMSC-041, ¶ 8, 126 N.M. 371, 970 P.2d 143. "We view the evidence in the light most favorable to the giving of the requested instruction." *State v. Hill,* 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139.

**The District Court Erred in Refusing to Submit Defendant's Requested Instruction for Attempted Second Degree Murder to the Jury**

{5}     "[A] defendant is entitled to an instruction on lesser included offenses if there is a reasonable view of the evidence that the lesser crime could have been the highest degree of crime committed." *State v. Baca*, 1997-NMSC-059, ¶ 23, 124 N.M. 333, 950 P.2d 776. Where the district court has rejected a defendant's lesser included offense instruction, it is reversible error if, in addition to the above, the lesser offense

3

is included in the greater charged offense and the defendant has tendered appropriate instructions preserving the issue. *Hill*, 2001-NMCA-094, ¶ 16.

{6}     Attempted second degree murder is a lesser included offense of attempted first degree murder. *See State v. Tafoya*, 2012-NMSC-030, ¶ 35, 285 P.3d 604 (vacating conviction for attempted first degree murder and ordering an entry of judgment on lesser included offense of attempted second degree murder). Furthermore, it is undisputed that Defendant tendered the appropriate instructions to the district court, thus preserving this challenge. Therefore, we proceed to consider whether there exists a reasonable view of the evidence that attempted second degree murder could have been the highest degree of crime committed. *Baca*, 1997-NMSC-059, ¶ 23.

{7}     Second degree murder is "the killing of a person, without sufficient provocation, lawful justification or excuse, and in the absence of a sudden quarrel or the heat of passion, with the knowledge that one's acts created a strong probability of death or great bodily harm to the person killed or another." *State v. Carrasco*, 2007-NMCA-152, ¶ 6, 143 N.M. 62, 172 P.3d 611 (internal quotation marks and citation omitted); *see* NMSA 1978, § 30-2-1(B) (1994). Second degree murder can be committed either intentionally or unintentionally. However, attempted second degree murder requires that the defendant intended to kill the victim or another, not just that the defendant acted recklessly so as to create a strong probability of death or great

4

bodily harm.  This is because attempt is a specific intent crime.  *See* NMSA 1978, § 30-28-1 (1963) (defining attempt as "an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission"); *Carrasco*, 2007-NMCA-152, ¶ 7 (stating that "if the jury could have found [the defendant] guilty of attempted second degree murder without determining that he intended to kill [the victim or another], it could have convicted him of an attempt to commit reckless or unintentional second degree murder, a crime that does not exist").  Therefore, attempted first degree murder and attempted second degree murder both require some form of the intent to kill.

{8}    The distinguishing feature between first and second degree murder is whether the killing was "deliberate and premeditated, or . . . only rash and impulsive." *State v. Garcia*, 114 N.M. 269, 273, 837 P.2d 862, 866 (1992); *see State v. Adonis*, 2008-NMSC-059, ¶ 16, 145 N.M. 102, 194 P.3d 717 ("[I]f the [s]tate merely proves that the accused acted rashly or impulsively, rather than deliberately, and if the accused acted intentionally and without justification or provocation, then the facts would only support second-degree murder.").  "The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action."  UJI 14-201 NMRA.  While UJI 14-201 notes that such deliberation may be arrived at in a short amount of time, our

Supreme Court has recently warned that hastened decision-making more often evidences a rash and impulsive killing than a deliberate and premeditated one. *Tafoya*, 2012-NMSC-030, ¶¶ 41-42 ("The notion that careful reasoning can occur in a short period of time seems somewhat counterintuitive, and rash and impulsive killings are far more likely to be the product of an expedited decision-making process than are carefully contemplated killings.").

{9}    We do not highlight this distinction to question Defendant's attempted first degree murder charge, but rather to emphasize the thin line in cases like this between an intentional and deliberate killing and an intentional yet rash and impulsive one. *See Adonis*, 2008-NMSC-059, ¶ 15 ("Because of the severity of punishment that first[]degree murder carries, it is clear that the Legislature did not intend to 'lump within [first[]degree murder] all other killings, even those which may in some sense be intentional but which lack the characteristics of deliberation and premeditation" (citing *Garcia*, 114 N.M. at 272, 837 P.2d at 865 (alteration in original)). While the evidence is somewhat disputed as to how much time elapsed, if any, between the shots Defendant fired toward Chavez and those toward the van, it is clear that Chavez's physical assault of Defendant initiated an immediate violent response from Defendant that ended in a relatively short amount of time. It is possible, as the State argued, that Defendant's pause between shooting at Chavez and shooting at the van gave

6

Defendant the time to carefully consider whether to also kill Sedillo. It is just as reasonable, however, to infer that Defendant acted rashly and impulsively in shooting at the van, albeit still with the intention to kill its supposed occupant. This is evidenced not only by the brevity of the incident but also by Defendant's own mistake as to Sedillo's location. Regardless, a jury could reasonably accept Defendant's view of the evidence and find that there was not the requisite premeditation and deliberation that distinguishes attempted first and second degree murder. *Cf. Tafoya*, 2012-NMSC-030, ¶ 42 ("Cases that have affirmed first degree murder convictions where the killing(s) occurred within a short period of time have relied on evidence beyond the temporal aspect of the crime in order to find sufficient evidence of deliberation."). Viewing the facts most favorable to giving the instruction, we therefore conclude that the district court erred in refusing to allow the jury to decide this close factual issue by rejecting Defendant's tendered jury instruction for attempted second degree murder.

{10}   Because we reverse Defendant's attempted first degree murder conviction, we also consider whether there was sufficient evidence adduced at trial to support Defendant's conviction for attempted first degree murder. *See State v. Kerby*, 2005-NMCA-106, ¶ 34, 138 N.M. 232, 118 P.3d 740 (noting that retrial is not barred by double jeopardy if the evidence at trial was sufficient to support the defendant's

7

conviction), *aff'd* 2007-NMSC-014, 141 N.M. 413, 156 P.3d 704. We review the sufficiency of the evidence pursuant to a substantial evidence standard. *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under a substantial evidence standard, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garcia*, 114 N.M. at 274, 837 P.2d at 867 (emphasis, internal quotation marks, and citation omitted).

{11} In order to find Defendant guilty of attempted first degree murder, the State was required to prove beyond a reasonable doubt that Defendant (1) intended to commit the crime of first degree murder, defined as the deliberate intention to take away the life of Sedillo; (2) began to do an act that constituted a substantial part of the crime but failed to commit it; and (3) did not act in self defense. Evidence at trial indicated that Defendant paused between shooting Chavez and firing toward the van. Of the four shots that entered the passenger side of the van, two entered the front passenger seat where Sedillo had previously been sitting. This evidence is sufficient for a reasonable jury to conclude that Defendant had the opportunity to form a deliberate and premeditated intent to kill Sedillo, and double jeopardy concerns do not bar retrial.

**The District Court Did Not Err in Rejecting Defendant's Tendered Jury Instruction for Voluntary Manslaughter**

8

**{12}** In *State v. Jernigan*, our Supreme Court held that attempted voluntary manslaughter may be a crime in limited circumstances. 2006-NMSC-003, ¶ 20, 139 N.M. 1, 127 P.3d 537. The Court stated that an attempted voluntary manslaughter instruction may be given when "the [district] court finds it appropriate to offer an attempted second[]degree murder instruction and sufficient provocation is an issue." *Id.* ¶ 18; *see State v. Gaitan*, 2002-NMSC-007, ¶ 11, 131 N.M. 758, 42 P.3d 1207 (indicating that voluntary manslaughter is a lesser included offense of second degree murder when sufficient provocation is an issue). Thus, the question is whether there was some evidence in the record to support the defendant's claim of sufficient provocation. *Gaitan*, 2002-NMSC-007, ¶ 11.

**{13}** "Sufficient provocation is defined as 'any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions.'" *Jernigan*, 2006-NMSC-003, ¶ 24 (quoting UJI-14-222 NMRA). "The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." *Id.* (internal quotation marks and citation omitted).

**{14}** Defendant argues that the evidence could support both an inference that Defendant was at all times acting under sufficient provocation as a result of his altercation with Chavez or that Defendant acted out of a belief that his actions were

9

necessary to prevent Sedillo from returning fire or otherwise avenging Chavez's death. To the extent that Defendant argues that Chavez's provocation in threatening and punching Defendant can be attributed to his acts directed at Sedillo, we disagree. "It is settled law that the victim must be the source of the provocation." *State v. Munoz*, 113 N.M. 489, 491, 827 P.2d 1303, 1305 (Ct. App. 1992); *see State v. Coffin*, 1999-NMSC-038, ¶ 19, 128 N.M. 192, 991 P.2d 477. Therefore, the relevant inquiry is whether there is evidence that Sedillo individually provoked Defendant. *See State v. Manus*, 93 N.M. 95, 99, 597 P.2d 280, 284 (1979) ("The general rule is that, in order to reduce murder to manslaughter, the victim must have been the source of the defendant's provocation. We therefore review the record to determine if there is some evidence that [the victim] provoked [the defendant]." (citations omitted)), *overruled on other grounds by Sells v. State*, 98 N.M. 786, 653 P.2d 162 (1982).

{15}    Defendant cites our Supreme Court's recognition in *Jernigan* that "[e]vidence of provocation exists to support a voluntary manslaughter instruction where the defendant feared the victim was attempting to get a gun with which to shoot the defendant, and the defendant acted to prevent the victim from getting the gun." *Jernigan*, 2006-NMSC-003, ¶ 24 (citing *State v. Wright*, 38 N.M. 427, 429, 34 P.2d 870, 871 (1934)). In this case, however, there was no evidence presented that Sedillo attempted to retrieve a gun or that Defendant was afraid that Sedillo was retrieving a

gun when he shot into the van. Unlike *Jernigan*, where the defendant testified that the victim approached him while reaching into his waistband, the only evidence in this case regarding Sedillo's actions is that he exited the van when Defendant shot Chavez and fled to another area of the parking lot. *See* 2006-NMSC-003, ¶ 25 (concluding that the defendant's testimony that he believed the victim was reaching for a gun and that this belief made him fearful constituted sufficient provocation). Without directing us to specific provoking acts by Sedillo, Defendant is asking us to infer that Sedillo aroused fear in Defendant sufficient to warrant a finding of provocation merely by being at the scene of the crime and being a friend of Chavez. These facts, by themselves, are insufficient evidence on which to base a reasonable conclusion that Sedillo provoked Defendant. *Cf. Coffin*, 1999-NMSC-038, ¶ 12 (citing *People v. Johnson*, 316 N.W.2d 247, 249-50 (Mich. Ct. App. 1982) for the proposition that the "principle [of self-defense] does not give a defendant *carte blanche* to kill anybody who is marginally associated with the alleged assailant" but only those that pose an immediate danger to the defendant). We therefore conclude that there is no rational view of the evidence that sufficient provocation was at issue in this case so as to warrant instructing the jury on attempted voluntary manslaughter. *See Hill*, 2001-NMCA-094, ¶ 17 (stating that the second element of the lesser included offense test considers "whether there is a rational view of the evidence that would lead the jury to

11

conclude beyond a reasonable doubt that [the d]efendant committed the lesser included offense while still harboring a reasonable doubt that [the d]efendant committed the charged offense." (internal quotation marks and citation omitted)).

**The District Court Did Not Err in Rejecting Defendant's Tendered Jury Instruction for Defense of Another**

{16} Defendant argues that he was entitled to a jury instruction on defense of another in regard to the shooting of Chavez. Passengers in the car testified that Chavez reached for Defendant's gun before he was shot. Defendant contends that if Chavez had taken the gun, he would have presented a threat not only to Defendant but to the others in the car.

{17} "An instruction on defense of another should be given if the evidence is sufficient to allow reasonable minds to differ as to all elements of the defense." *Jernigan*, 2006-NMSC-003, ¶ 3 (internal quotation marks and citation omitted). To receive the defense of another instruction for killing Chavez, Defendant would have had to present sufficient evidence that there was an appearance of immediate danger of death or great bodily harm from Chavez to the other men in the car. *See* UJI 14-5184 NMRA.

{18} In *Jernigan*, the only case cited by Defendant, the defendant witnessed the victim severely beating his girlfriend. 2006-NMSC-003, ¶ 5. The defendant intervened in the altercation and the victim approached the defendant while reaching

12

into his waistline, potentially to grab a gun, before the defendant shot him. *Id.* Our Supreme Court held that "[a]lthough the evidence shows [the girlfriend] was clearly at risk of some injury, it does not support the view that [the d]efendant believed [the girlfriend] was in imminent danger of death or great bodily harm." *Id.*

{19} In this case, we conclude that Defendant's assertion that he was acting to protect others when he shot Chavez is too speculative to warrant a defense of others jury instruction. The only evidence before the district court was that Chavez punched Defendant and reached for Defendant's gun. If the Supreme Court did not find a threat of immediate great bodily harm in *Jernigan*, where the victim was severely attacking the defendant's girlfriend and he believed the victim was reaching for a gun when the defendant shot the victim, *id.*, we cannot say that under these facts, the district court erred in refusing Defendant's defense of others jury instruction.

**Defendant's Convictions for Shooting at or From a Motor Vehicle and Second Degree Murder Violate His Right to Be Free From Double Jeopardy**

{20} Defendant claims that his convictions for second degree murder and shooting at or from a motor vehicle resulting in great bodily harm to another person, both second degree felonies, violate his right to be free from double jeopardy. *See* § 30-2-1(B); NMSA 1978, § 30-3-8(B) (1993). Based upon our Supreme Court's recent holding in *State v. Montoya*, we agree. No. 32,279, slip op. at ¶ 54 (N.M. Sup. Ct. May 16, 2013).

13

{21} "Among its protections, the double jeopardy clause protects a defendant against multiple punishments for the same offense." *State v. Gonzales*, 2007-NMSC-059, ¶ 11, 143 N.M. 25, 172 P.3d 162. Defendant's conviction and sentence for second degree murder and shooting at or from a motor vehicle arise from the single act of shooting and killing Chavez and thus raise a "double-description" double jeopardy claim. *See id.* (recognizing that "cases where the defendant is charged with violation of multiple statutes for the same conduct" are "double-description" cases (internal quotation marks omitted)). In addressing double-description claims, we employ the two-part test set forth by our Supreme Court in *Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). *See State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. First, we determine whether the conduct underlying the offenses was unitary. *Id.* In this case, it is clear that the conduct was unitary; Defendant was convicted of second degree murder for his act of shooting and killing Chavez, and his conviction for second degree shooting at or from a motor vehicle is based on the same conduct.

{22} Because Defendant's conduct is unitary, "we proceed to the second part of the test, which requires us to examine the relevant statutes to determine whether the Legislature intended to create separately punishable offenses." *State v. Armendariz*, 2006-NMSC-036, ¶ 21, 140 N.M. 182, 141 P.3d 526 *overruled on other grounds by Swick*, 2012-NMSC-018. In *Montoya*, our Supreme Court overruled longstanding

14

precedent that held that the Legislature intended homicide and shooting at or from a motor vehicle to be separately punishable offenses. No. 32,279, slip op. at ¶ 54 (overruling *State v. Gonzales*, 113 N.M. 221, 824 P.2d 1023 (1992), *State v. Dominguez*, 2005-NMSC-001, 137 N.M. 1, 106 P.3d 563, and *State v. Riley*, 2010-NMSC-005, 147 N.M. 557, 226 P.3d 656). The Court instead held that the Double Jeopardy Clause prohibits cumulative punishment for the two offenses where both convictions are premised on the unitary act of shooting the victim. Because Defendant's convictions in this case are both premised on Defendant's act of shooting and killing Chavez, we hold that these two convictions violate Defendant's right to be free from double jeopardy. Accordingly, one of the convictions must be vacated. *Id.*

**{23}** "[W]here one of two otherwise valid convictions must be vacated to avoid violation of double jeopardy protections, we must vacate the conviction carrying the shorter sentence." *Id.* ¶ 55. Both of Defendant's convictions were second degree felonies but Defendant was sentenced to fifteen years for the second degree murder conviction and nine years for the shooting at or from a motor vehicle conviction. *See* NMSA 1978, § 31-18-15(A)(4), (6) (2007) (mandating basic sentence for second degree felony as nine years and enhancing the basic sentence to fifteen years where the second degree felony results in the death of another human being). Therefore,

15

since the shooting at or from a motor vehicle conviction carries the lesser of the two sentences, we remand to the district court with instructions to vacate this conviction.

**The District Court Did Not Abuse Its Discretion in Refusing to Allow Defendant to Present Character Evidence of Victim Chavez**

{24} Because Defendant claimed self defense, he sought to introduce testimony of prior violent conduct by Chavez in order to prove that Chavez was the initial aggressor in the affray. Defendant sought to call a manager of a local Albuquerque store who had a previous encounter with Chavez in which Chavez verbally assaulted a store clerk and physically assaulted the manager. Defendant argues that the district court abused its discretion in excluding the evidence under *Armendariz*, 2006-NMSC-036, ¶ 17, and, alternatively, in not allowing the manager to testify as to his opinion of Chavez's reputation for having a violent disposition.

{25} In *Armendariz*, our Supreme Court held that "evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor when the defendant is claiming self-defense." *Id.* Thus, the district court properly excluded the manager's testimony regarding this specific incident of Chavez's violent conduct.

{26} Defendant counters, however, that he was prepared to limit the manager's testimony to reputation or opinion evidence of Chavez's violent disposition. *See id.* ("[U]nder Rule 11-405(B) NMRA, only reputation or opinion evidence should be

16

admitted to show that the victim was the first aggressor."). While we express some reservation that the manager could adequately form a relevant opinion as to Chavez's violent disposition based on his one brief encounter with Chavez, it is immaterial because there was little dispute that Chavez initiated the affray. *See Armendariz*, 2006-NMSC-036, ¶ 18 (holding no abuse of discretion in excluding evidence of the victim's violent conduct where there was "ample testimonial evidence presented at trial to support [the d]efendant's contention that [the victim] initiated the altercation"). Furthermore, while reputation or opinion evidence may have been admissible to show Chavez's violent disposition, the district court did not abuse its discretion in concluding that the probative value of the manager's proposed testimony regarding this isolated encounter between the manager and Chavez was substantially outweighed by the danger that it would confuse the issues or mislead the jury. *See* Rule 11-403 NMRA ("The court may exclude relevant evidence if its probative value is substantially outweighed by [the] danger of . . . confusing the issues [or] misleading the jury[.]").

**The District Court Did Not Err in Refusing to Admit Chavez's Prior Criminal History to Impeach Sedillo's Hearsay Assertion That Defendant Had a Gun**

17

{27} Defendant argues that the district court abused its discretion in refusing to allow him to impeach Chavez's credibility by evidence of Chavez's prior convictions.[1] During the State's examination of Sedillo, the following exchange occurred:

> Prosecutor: When you were in the van next to this car, did you ever see a gun?
>
> Sedillo: He did. He told me. I never seen one.

Defendant did not object to Sedillo's answer. After Sedillo was excused from the stand, Defendant moved to impeach Chavez's credibility, under Rules 11-806 and 11-609 NMRA, with testimony regarding the incident involving Chavez at the Albuquerque store and Chavez's felony convictions. The district court ruled that the motion was untimely and denied Defendant's motion.

{28} "When a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Rule 11-806. Rule 11-609 provides for the impeachment of a witness by evidence of conviction of a crime.

---

[1]To the extent that Defendant is claiming that testimony by another passenger in Defendant's vehicle, Mr. Narvarro, included a hearsay statement by Chavez to the effect that Defendant "flashed" a gun at Chavez, Defendant has not provided a citation in the record to this alleged testimony and we did not find any such statement in our review. Therefore, we proceed to consider only Mr. Sedillo's testimony on this point. *See Santa Fe Exploration Co. v. Oil Conservation Comm'n*, 114 N.M. 103, 108, 835 P.2d 819, 824 (1992) (stating that where a party fails to cite any portion of the record to support its factual allegations, the appellate courts need not consider its argument on appeal).

Admission of this type of impeachment evidence is subject to Rule 11-403. *See* Rule 11-609(A)(1)(a).

{29}     We note first that because Defendant never objected to the statement, there was no determination by the district court that the statement was being admitted as a hearsay statement.  Even assuming that it was, we conclude that the probative value of the impeachment evidence was substantially outweighed by its potential to cause undue delay, confusion of the issues, and mislead the jury. *See* Rule 11-403.  No one disputed that Defendant was holding a gun when the two cars were side-by-side on the road.  Allowing a full credibility impeachment of Chavez in order to attack a statement directed toward an undisputed issue in the trial would be unnecessary to the ultimate determination of the case.  Accordingly, the district court did not abuse its discretion in refusing to allow Defendant to impeach the credibility of Chavez.

**Defendant's Confrontation Rights Were Not Violated By the Admission of an Out-of-Court Statement by Defendant's Brother**

{30}     During the testimony of a witness who was a passenger in Defendant's vehicle, the witness related a statement by Defendant's brother, who was also in the vehicle. The witness testified that after Defendant shot Chavez, Defendant's brother stated, "Just finish it."  Defendant's brother did not testify at trial and Defendant did not have a previous opportunity to cross-examine his brother regarding the statement. Defendant therefore argues that his confrontation rights were violated by admission

of the statement. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"); *State v. Zamarripa*, 2009-NMSC-001, ¶ 23, 145 N.M. 402, 199 P.3d 846 ("Out-of-court testimonial statements are barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court."). "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110.

{31} The Confrontation Clause applies only to testimonial statements. *See Aragon*, 2010-NMSC-008, ¶ 6 (stating that the Confrontation Clause "applies to witnesses against the accused—in other words those who bear testimony[.] . . . [O]nly testimonial statements cause the declarant to be a witness within the meaning of the Confrontation Clause." (internal quotation marks and citations omitted)). Statements are testimonial when there is no ongoing emergency and the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Zamarripa*, 2009-NMSC-001, ¶ 24 (internal quotation marks and citation omitted).

20

**{32}** Defendant provides no argument that the statement at issue was testimonial, and we see no reason to conclude that it was. *See Aragon*, 2010-NMSC-008, ¶ 6 (noting list of the "core class of testimonial statements" (internal quotation marks omitted)). Furthermore, even if we were to conclude that the statement was testimonial, the district court did not err in admitting it. The district court ruled that the statement was not being offered for the truth of the matter asserted. "The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* (internal quotation marks and citation omitted). Defendant does not challenge this ruling by the district court, nor does Defendant argue that admission of the statement was improper under any other rule of evidence. *See id.* ("Once it has been established that the Confrontation Clause does not bar admission of the statement, the rules of evidence govern whether the statement is admissible."). Accordingly, we reject Defendant's argument that his confrontation rights were violated.

**This Court has No Authority to Overrule the Supreme Court**

**{33}** Defendant, a juvenile at the time of the offense, argues that he is entitled to have a jury determine beyond a reasonable doubt whether or not he is amenable to treatment. In so arguing, Defendant recognizes this Court would have to conclude that *State v. Rudy B.*, 2010-NMSC-045, 149 N.M. 22, 243 P.3d 726, *cert. granted*, 2011-

21

NMCERT-006, 150 N.M. 764, 266 P.3d 633, was wrongly decided. We are bound by Supreme Court precedent and accordingly do not consider Defendant's argument on this point. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973).

**CONCLUSION**

{34}     For the foregoing reasons, we reverse Defendant's conviction for attempted first degree murder on the basis that he was entitled to a jury instruction on the lesser-included offense of attempted second degree murder. We further vacate Defendant's conviction for second degree shooting at or from a motor vehicle. We remand for proceedings consistent with this Opinion.

{35}     **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**J. MILES HANISEE, Judge**

22